Katherine AANESTAD, as Special Administratrix to the Estate of Marcy Silverberg, Deceased, Plaintiff,

v.

AIR CANADA, INC., a Crown corporation, McDonnell Douglas Corporation, a corporation, Defendants.

Katherine AANESTAD, as Special Administratrix to the Estate of Steven Silverberg, Deceased, Plaintiff,

v.

AIR CANADA, INC., a Crown corporation, McDonnell Douglas Corporation, a corporation, Defendants.

Civ. Nos. 71-2227, 71-2228.
M.D.L. No. 103.

United States District Court,
C. D. California.

Sept. 30, 1974.

Daniel C. Cathcart, Magana & Cathcart, Los Angeles, Cal., for plaintiffs.

Belcher, Henzie & Biegenzahn, Los Angeles, Cal., for the defendants McDonnell Douglas Corp.

Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for defendant Air Canada.

MEMORANDUM AND ORDER (1) DENYING MOTION TO DISMISS; (2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

PEIRSON M. HALL, Senior District Judge.

Marcy Silverberg, the decedent in Case No. 71–2227–PH, and Steven Silverberg, the decedent in Case No. 71–2228, were children of Gerald Silverberg and were two of the 109 persons killed in the crash near Toronto, Canada, of an Air Canada plane en route from Montreal, Canada, to Los Angeles, California, with a stopover at Toronto.

The plaintiff in each case is the Special Administratrix appointed for the estate of each in the Superior Court of Los Angeles County, State of California. The decedents were citizens of Canada and resided in the City of Montreal, Province of Quebec, Dominion of Canada. The two persons claiming to be heirs of each of the decedents were residents and citizens of Canada. They are Gerald Silverberg, father of both decedents Marcy and Steven Silverberg, and Katherine Brownstein, their grandmother.

According to the stipulation of facts, "The ticket booklet issued to each of the decedents contained *separate* tickets for flights from Montreal, Canada, to Los Angeles, California, and from Los Angeles, California, to Montreal, Canada." (Emphasis supplied.) [1]

Actions are pending for the wrongful death of each decedent against defendant Air Canada in the Province of Quebec, Dominion of Canada.

A number of the death cases arising from the same crash were filed in various United States Courts and were transferred to this District and assigned to this Judge under Multidistrict Litigation Docket No. 103 (28 U.S.C. § 1407), and consolidated with the cases filed in this District on the question of liability.

No case has gone to trial on the issue of liability.

By agreement of the parties these two above-numbered cases, among several others, were severed as to damages and tried to a jury on that issue only. Verdicts resulted in the sum of $40,000 for the death of Marcy Silverberg (No. 71–2227) and $40,000 for the death of Steven Silverberg (No. 71–2228).

All of the other cases arising from said crash have been settled, including several which went to judgment on damages only.

The defendants have declined to pay the amount of the verdicts in these cases or to settle.

[1] This Memorandum was first written March 1974, but to be sure the Court understood the stipulation, the Court requested Air Canada to provide a true copy of the tickets. They were not supplied, only a "reconstituted" ticket which was on one sheet and not "separate". Thus the stipulation controls.

The defendant Air Canada[2] has filed no answer. It did file a separate motion to dismiss on the ground that this Court had no jurisdiction, (1) under the Warsaw Convention, and that there is, (2) no diversity of citizenship between the plaintiff and Air Canada.

Previously the plaintiff filed a motion to strike the defense of the Warsaw Convention as to limitation of liability and jurisdiction on the ground that the Warsaw Convention was unconstitutional for various reasons.[3] The Court deferred action in the hope that most, if not all, of the numerous cases filed could and would be settled without the delays and expense of a trial on the merits as to liability. That hope has materialized as above noted in all cases except these two.

The plaintiff has now reversed the position and has filed motion for summary judgment in each case against Air Canada, claiming, in summary, that the verdict sets at rest the amount of damages; that all the material facts are stipulated to; and that under the Warsaw Convention and the verdict being for $40,000, under the terms and provisions of the "Montreal Interim Agreement" of 1966 by which the signatory airlines agreed to a maximum of 75,000 American dollars as damages instead of the 8,300 odd dollars set forth in the "Warsaw Convention," they are entitled to a summary judgment as a matter of law.

The question of whether or not this Court has jurisdiction under the Warsaw Convention is involved in the recently filed and presently pending motion of plaintiffs for summary judgment as well as in the motion to dismiss previously filed. What is hereinafter said with relation to that subject will be equally applicable to that point raised in the motion of Air Canada to dismiss and in the response of Air Canada to plaintiff's Motion for Summary Judgment.

As to diversity of citizenship:

The defendants urge that the Special Administratrix of the estate in each case is a secretary in the office of plaintiff's counsel, and that although there is diversity in fact between the Administratrix in each case and Air Canada, no jurisdiction in "substance" exists, but that it is purely "manufactured."

There is no doubt that Air Canada, Inc., is a corporation organized in Canada, and as such, of course, it is a citizen of Canada, and, according to the undenied allegations of the Complaint, was doing business in the State of California, with a principal place of business in the City of Los Angeles. For the purpose of this motion those facts must be taken as true. Thus, assuming the executrix is a proper party, from the allegations of the Complaint, there is diversity as to Air Canada under the provisions of 28 U.S.C. § 1332(a)(2).

The authorities are divided on the question of whether or not diversity is controlled by the citizenship of the executrix or of the beneficiary, if they are different.

In 1808 the Supreme Court in Chappedelaine v. Dechenaux, 4 Cranch 306, 2 L.Ed. 629, laid down the rule that it was the citizenship of the *personal representative* and not the beneficiary which controlled. This was reiterated in Susquehanna, etc., v. Blatchford, 11 Wall 172, 78 U.S. 172, in 1870, where the court said:

Susquehanna, etc. v. Blatchford, 11 Wall 172, 78 U.S. 172.

2. The Court is not concerned with McDonnell Douglas, but only with the motion to Dismiss by Air Canada and the plaintiff's Motion for Summary Judgment against Air Canada, both of which are concerned with the Warsaw Convention and the Montreal agreement.

3. The Court does not reach either of those questions here, and nothing in this opinion is intended to indicate a view as to the constitutionality or legality of the Warsaw Convention or the "Montreal Agreement" or any proceedings or actions of the United States in relation to them or either of them, or of the Hague Protocol, or the "Chicago Agreement."

"Each plaintiff must be competent to sue * * * *. Executors and trustees suing for others' benefit form no exception to this rule. If they are personally qualified by their citizenship to bring suit in the Federal courts, the jurisdiction is not defeated by the fact that the parties whom they represent may be disqualified. This has been repeatedly adjudged. It was so adjudged as early as 1808 in Chappedelaine v. Dechenaux, 4 Cranch 307 [306] 2 L.Ed. 629 * * * *. This ruling was followed in Childress v. Emory, 8 Wheat 669 [642], 5 L.Ed. 705, and in Osborn v. The Bank of the United States, 9 Wheat 738 at 816, 6 L.Ed. 204 (1824). The Chief Justice [Marshall] laid it down as a universal rule that, in controversies between citizens of different States, the jurisdiction of the Federal courts depended not upon the relative situation of the parties concerned in interest, but upon the relative situation of the parties named in the record."

The rule was consistently followed until the Third Circuit in McSparran v. Weist (1968), 402 F.2d 867; cert. den.[4] 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217, by a lengthy opinion in which it overruled several of its previous cases and held that the citizenship of the beneficiary controlled over the citizenship of the guardian in determining diversity, and that under the facts in that case diversity had been "manufactured" solely to secure jurisdiction.[4a]

Summarily it can be said that the court there relied on 28 U.S.C. § 1359[5] and held that *under the facts in that* case the guardianship proceeding had been to "manufacture" diversity, "solely" to secure jurisdiction under 28 U.S. C. § 1332; and that was a determination of a question of fact.

The cases since that decision have been divided.

There are things in that opinion with which I definitely do not agree,[6] but will assume (for the purposes of this case only) that the rule is as I have summarily stated it above from the *McSparran* case.

■ In order for citizenship to be "manufactured solely" for the purposes of creating diversity there must be no other substantial motives for the creation of the fiduciary relationship.

There are present here undeniable substantial motives for bringing the suit in this District. McDonnell Douglas was made a party defendant in the original suit. An examination of the Complaint and the Report of the Canadian Board of Inquiry shows that they had substantial reason to do so on the basis of product liability.[7] McDonnell Douglas did not do business in Canada and hence could not be sued there so that the United States was the only place providing a court where jurisdiction of *both* Air Canada *and* McDonnell Douglas could be had, and thus not only avoid two trials, but avoid the possibility of no recovery at all, if the absent one in each trial were found to be the culpable one.

Furthermore, many other cases arising from the same crash were pending in this Court where the matter of liabili-

---

4. A denial of certiorari by the Supreme Court has been held not to be an affirmance of the judgment; the citation of cases would be a mere make-weight on that point.

4a. I know of no authority which gives even a Circuit Court of Appeals the power to *overrule* the Supreme Court.

5. Sec. 1359. *Parties collusively joined or made.* A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court. June 25, 1948, c. 646, 62 Stat. 935.

6. For instance, in that case there was a guardianship proceeding in which title to the ward's property does not vest in the guardian, whereas in the instant case the plaintiff is an executrix in whom was vested the title to the chose in action.

7. Items I, II, III, IV out of a total of eight [VIII] recommendations made in the report dealt with recommendations to *the* manufacturer, McDonnell Douglas, for changes.

ty could be tried with least expense and inconvenience to defendants.

[redacted] I conclude that there was no manufacturer of diversity solely for the purpose of creating jurisdiction but that the executrix was appointed in California to pursue a substantial claim of liability against both Air Canada and McDonnell Douglas.

I turn to the questions which involve the Warsaw Convention and the Montreal Agreement. The pertinent provisions of the 1966 Montreal Interim Agreement are as follows:

"The carrier shall avail itself of the limitation of liability provided in the Convention for the Unification of Certain Rule Relating to the International Carriage by Air signed at Warsaw October 12, 1929, or provided in said Convention * * *. *However, in accordance with Article 22(1) of said Convention * * * the carrier agrees that, as to all international transportation* by the carrier as defined in said Convention *which,* * * *, *according to the Contract of Carriage, includes a point in the United States of America* as point of origin, *point of destination,* or *agreed stopping place.*

"(1) The limit of liability for each passenger for death, wounding or other bodily injury shall be the sum of U.S. $75,000.00, inclusive of legal fees and costs, except that, in the case of a claim brought in a State where provision is made for separate award of legal fees and costs, the limit shall be the sum of U.S. $58,000.00, exclusive of legal fees and costs.

"(2) The carrier shall not, with respect to any claim arising out of the death, wounding, or other bodily injury of a passenger, avail itself of any defense under Article 20(1) of said Convention * * *"[8]

While there is nothing before the Court to the effect that Air Canada was a "signatory" to the "Montreal Agreement," there has been a tacit understanding among everybody that such is the fact.[9]

Article 22(1) of the 1929 Warsaw Convention in its pertinent part reads:

"In the transportation of passengers the liability of the carrier for each passenger shall be limited to 125,000 francs." [about $8,000]

It is clear from the plain language of the above that inasmuch as the verdicts were for less than $75,000, the defendant has absolute liability under the terms of the Montreal Interim Agreement.

The defendants, however, urge that under Article 28 of the Warsaw Convention this Court does not have jurisdiction but *exclusive jurisdiction* resides in Canada. The pertinent portion of Article 28 of the Warsaw Convention, 49 Stat. page 3000, provides:

"An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the Court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made or before the court at the place of destination."[10]

8. There is no showing, or claim of adherence, approval, or consent of any kind by either the United States or Air Canada to the Hague "Protocol" of September 28, 1955.

9. I am unable to find the text of the Montreal Agreement in any officially published law book, either the Statutes, the Codes, or Code of Federal Regulations.

10. Canada was not a "High Contracting Party" (49 Stats. 3023, 3024) and the record does not show the adherence of Canada but both counsel assume it. And this opinion is written on that assumption. There is nothing in the Convention or the Montreal Agreement that defines a "High Contracting Party" or an "adherent." The United States did not sign the treaty nor have a delegate there. Inasmuch as the parties do not raise any point about it, I will pass it, but wish to observe that any opinion on that point is reserved until it is raised.

It is noted that the action for damages must be brought at the option of the plaintiff "in the territory of one of the High Contracting Parties, *either* before the court of the domicile of the carrier *or* of his principal place of business." There is no doubt that the domicile of the carrier here is Canada; there is no doubt that plaintiffs do not question here the legality of the "adherence" of the United States nor that California is a state of the United States. So it would seem to me that phrase means that the "action for damages *must be brought*" at the option of the plaintiff, at the "principal place of business * * * *in the territory of one of the high contracting parties.*" It is alleged in the Complaint that Air Canada had and has a principal place of business in Los Angeles, California. No answer has been filed and it is thus not denied. It is not included in the stipulation of facts, therefore the court must take the allegation of the Complaint as true. This alone would give this Court jurisdiction.

Moreover, it is noted that the last clause of Article 28, paragraph (1), permits the action to be brought "before the court at the *place* of destination."

Before adverting to the decisions on the point it is well to look at the Montreal Interim Agreement hereinabove quoted. It is noted that it provides, *inter alia,* "However, in *accordance with Article 22(1)*[11] *of said Convention* * * * the carrier agrees that, as to *all international transportation* by the carrier as defined in said Convention which, * * * according to the Contract of Carriage, *includes a point in the United States as point of origin, point of destination, or agreed stopping place.*"

The limitation contained in section 22(1) was the very thing which caused the Montreal Interim Agreement. The United States Department of State had given a notice of renouncement of the Warsaw Convention,[12] which all parties agree was what precipitated the calling of the Montreal Conference resulting in the Interim Agreement, after which the renunciation was withdrawn.

By the above Article the limitation of liability is placed at 125,000 French francs, and it is noted that it provides, "Nevertheless, by special contract, the carrier and the passenger may agree to a higher limit of liability."

And that appears to me to be just what has been done by the last above-quoted provision of the Montreal Interim Agreement, which, in effect, states that if international agreement of transportation includes a "point of destination" within the United States, that the damages will be increased according to the Montreal Interim Agreement rather than limited by the original provisions of the Warsaw Convention.

Surely with a *separate* ticket issued to each from Montreal to Los Angeles, Los Angeles was the "point of destination" not only of *that* flight but both the ticket holders.

The parties have cited cases which are both ways on the subject. I do not find any of them which hold that a separate ticket purchased in and from Montreal to Los Angeles (the point of destination of that flight), and another separate ticket back to Montreal at an unstated time, that Montreal would be the place of destination. The place of destination of that flight was Los Angeles. There was a separate ticket issued from Montreal to Los Angeles. It was the place of destination on that ticket. There was a separate ticket issued for the transportation from Los Angeles to Montreal

---

11. The article which limits recovery to 125,-000 francs.

12. Such renunciation apparently was not made by the President by and with the advise and consent of the Senate which is required to make a treaty. See Const. Art. II, Sec. 2, Clause 2. The query lurks, if it takes the "advise and consent" of the Senate to make a treaty, would it not require the "advise and consent" at the request of the President to denounce it? Which produces another lurking query: If the State Department can "denounce," i. e., terminate the Warsaw Convention, How can it be a treaty?

and in that ticket Montreal would have been the *place of destination.* So the place of destination of the flight upon which the accident occurred was to Los Angeles and the *place of destination* of the person using the ticket from Montreal was Los Angeles.

I accordingly conclude that the plaintiffs are entitled to their motion for summary judgment. In view of the fact that this opinion and Memorandum of decision sets forth all the necessary facts and law upon which to base judgment, it will be sufficient without separate findings and conclusions.[13]

I have this day signed the judgment.

---

13. F.R.Civ.P. 52. " * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."