Ten Fong CRAIG, individually and as Administratrix of the Estate of William Henry Craig deceased, Plaintiff–Appellant,

v.

ATLANTIC RICHFIELD CO., et al., Defendants–Appellees.

No. 92–16962.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1994.

Decided March 23, 1994.

Benton Musslewhite, Houston, TX, for plaintiff-appellant.

Ernest N. Reddick, Derby, Cook, Quinby & Tweedt, San Francisco, CA, and James M. Derr, Belcher, Henzie & Biegenzahn, Los Angeles, CA, for defendants-appellees.

Before: HUG, FARRIS and O'SCANNLAIN, Circuit Judges.

FARRIS, Circuit Judge.

Plaintiff Ten Fong Craig (widow of William H. Craig), individually and as administratrix of the estate of William H. Craig, appeals the district court's judgment in favor of defendants Atlantic Richfield Co., Brinkerhoff Maritime Drilling Corporation and Crowley Maritime Corporation. The district court held that (1) plaintiff was not entitled to a jury trial, (2) the *Sinkler/Hopson* doctrine did not apply to defendants Brinkerhoff and Crowley, (3) defendants Brinkerhoff and Crowley were not negligent, and (4) an airplane is not an "appurtenance" of a vessel.

The district court had jurisdiction pursuant to the Jones Act, 46 U.S.C.App. § 688. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I. BACKGROUND

William Craig was killed in an airplane crash in Indonesia while being transported to work in a DC–3 airplane operated by Airfast, an aircraft charter company. At the time of the crash, Craig was an employee of Brinkerhoff, the wholly owned subsidiary of Crowley.

William Craig worked aboard the offshore drilling barge Brinkerhoff–I, a vessel operated by Brinkerhoff and Crowley. Brinkerhoff had entered into a drilling contract with Atlantic Richfield Indonesia Inc. (not a defendant in this case), a wholly owned subsidiary of ARCO. In February, 1981, Atlantic Richfield Indonesia directed Brinkerhoff to move the barge to a lease concession operated by Hudbay Oil. Atlantic Richfield Indonesia and Hudbay executed an agreement providing that Brinkerhoff would perform drilling operations for Hudbay. Pursuant to this agreement, the Brinkerhoff–I was moved from the Java Sea to the Malaca Straits. Hudbay entered into an Aircraft Charter Agreement with Airfast to transport the employees of Brinkerhoff from Singapore to Pekanbaru, Indonesia. From Pekanbaru, Brinkerhoff employees were flown via helicopter to the Brinkerhoff–I.

Five weekly charter flights took place between Singapore and Pekanbaru beginning the last week of March 1981 pursuant to the charter agreement between Airfast and Hud-

bay. The first two flights left at 6:00 AM. One of the two encountered severe fog while trying to land and was forced to return to Singapore. Complaint was made by William Craig to Stephen Chia (in charge of crew changes and crew transportation for Brinkerhoff) and Richard Alex (general drilling superintendent for Brinkerhoff) that the weather conditions early in the morning were unfavorable for flying. Alex testified that he called Airfast directly and requested that the flights leave at 8:00 AM. The next two flights left at 8:00 AM. The fifth and fateful flight left at 6:00 AM on April 28, 1991, encountered severe fog, and crashed while attempting to land.

Ten Fong Craig brought action against the named defendants and numerous foreign defendants (who have since been dismissed) in September, 1983. Shortly after the complaint was filed, defendant ARCO demanded a jury trial. Plaintiff's counsel states in an affidavit that he relied on ARCO's jury demand and assumed that the case would be tried before a jury. However, prior to trial, the district court ruled that ARCO did not have the right to demand a jury trial. Over plaintiff's objections, a bench trial was held.

The district court held that ARCO was not a Jones Act employer of William Craig and therefore not liable for his death. Plaintiff does not dispute this holding. The court also held that Brinkerhoff and Crowley were Jones Act employers, but were (1) not liable under the *Sinkler/Hopson* doctrine because Airfast was not their "agent" and (2) not directly negligent. The court further held that the DC–3 aircraft could not be considered an "appurtenance" of the vessel and that the doctrine of unseaworthiness was therefore not applicable.

## II. The Jury Question

Plaintiff contends that the district court erred by denying her a trial by jury. She raises the following arguments: (1) ARCO had the right to demand a jury trial, and she properly relied on that demand; (2) even if ARCO did not have the right to demand a jury trial, she was entitled to rely on ARCO's demand; (3) the district court abused its discretion under Federal Rule of Civil Procedure 39(b) by denying her a jury trial; (4) she was entitled to rely on the jury demands of parties in related cases; and, (5) defendants were estopped from demanding a nonjury trial.

### A. ARCO's Jury Demand

The Federal Rules of Civil Procedure preserve a party's right to demand a jury trial if such right stems from the Seventh Amendment or a federal statute. *See* Fed.R.Civ.P. 38(a). Plaintiff contends that ARCO had a right to demand a jury trial under the Seventh Amendment and pursuant to the Jones Act, 46 U.S.C.App. § 688, and that she had the right to rely on such demand under Federal Rule 39(a)(1).[1]

### 1. The Jones Act

■ The Seventh Amendment preserves a party's right to a jury trial as it existed at common law. *See* U.S. Const. amend. VII. Since there was no common law right to a jury trial in admiralty cases, the Seventh Amendment does not apply to suits that invoke only a federal court's admiralty jurisdiction. *Waring v. Clarke*, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847).

The Jones Act, however, confers a statutory right to a jury trial. The Act provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury...." 46 U.S.C.App. § 688. Plaintiff could have demanded a jury trial had she made her demand within 10 days of serving her complaint. *See* Fed.R.Civ.P. 38(b). Since plaintiff made no such demand, we must decide whether the Jones Act confers a similar right on a defendant.

■ The Fifth Circuit has held that in actions where a federal court's sole basis for

---

1. Rule 39(a)(1) provides that "[w]hen trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury unless the parties ... consent to trial by the court sitting without a jury." Fed. R.Civ.P. 39(a)(1).

jurisdiction is under the Jones Act, only the plaintiff has a right to demand a jury trial. *See Rachal v. Ingram Corp.*, 795 F.2d 1210 (5th Cir.1986); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1489 n. 16 (5th Cir.) (citing *Rachal*), *cert. denied,* ——— U.S. ———, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). We agree. The plain language of the Jones Act gives a *plaintiff* the option of maintaining an action at law with the accompanying right to a jury trial. The Act makes no mention of a defendant.[2]

### 2. Diversity of Citizenship

■ Plaintiff also argues that even if ARCO did not have a right to demand a jury trial under the Jones Act, ARCO had a Seventh Amendment right to a jury trial because the district court had diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332. We have held that where a federal court has an independent basis of jurisdiction over cases involving admiralty claims, such as diversity of citizenship, both the defendant and plaintiff have a right to demand a jury trial under the Seventh Amendment so long as the suit is one that could traditionally have been brought "at common law." *See Wilmington Trust v. U.S. Dist. Court*, 934 F.2d 1026 (9th Cir.1991) (holding that defendant had right to jury trial in admiralty case where defendant alleged counterclaims for which there were independent bases of jurisdiction), *cert. denied,* —— U.S. ——, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992); *Owens–Illinois, Inc. v. United States Dist. Court*, 698 F.2d 967, 971–72 (9th Cir.1983).

■ The district court ruled that under 28 U.S.C. § 1332(c)(2),[3] plaintiff is deemed a resident of California by virtue of her husband's residence there. Since ARCO, Brink-

erhoff and Crowley have principal places of business in California, the district court ruled that diversity was absent. Even if plaintiff is correct that she should be attributed Singaporean citizenship due to the fact that the case was commenced prior to the 1988 amendment to 28 U.S.C. § 1332(c)(2),[4] complete diversity did not exist at the time ARCO made its jury demand. At that stage in the proceedings, the case involved a single foreign plaintiff (assuming plaintiff is considered a citizen of Singapore) and numerous foreign defendants (in addition to U.S. defendants), thereby defeating diversity. *See Faysound Ltd. v. United Coconut Chemicals*, 878 F.2d 290, 294–95 (9th Cir.1989) (presence of foreign plaintiff and foreign defendants defeats diversity).

ARCO did not have a right to demand a jury trial under the Jones Act or the Seventh Amendment.

### B. Reliance on ARCO's Jury Demand

■ Plaintiff argues that even if ARCO did not have the right to demand a jury trial, she had the right to rely on ARCO's jury demand pursuant to Rule 39(a)(1). We reject the argument.

Rule 39(a)(1) provides that "[w]hen trial by jury has been demanded *as provided in Rule 38*, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury unless the parties ... consent to trial by the court sitting without a jury." Fed.R.Civ.P. 39(a) (emphasis added). Rule 38(a) only preserves the right to a jury trial "as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."

---

**2.** Plaintiff argues that the Supreme Court's decision in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) created a "quasi-constitutional" right to a jury trial under the Seventh Amendment for Jones Act plaintiffs and defendants. The argument lacks merit. In *Fitzgerald,* the Court held that a plaintiff's Jones Act right to a jury trial also could extend to a plaintiff's non-Jones Act admiralty claims. The Court explained that while "the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them." *Id.* at 20, 83 S.Ct. at 1650.

**3.** 28 U.S.C. § 1332(c)(2) provides that "the legal representative of the estate of a decedent shall be deemed a citizen only of the same state as the decedent."

**4.** Prior to 1988, courts looked to whether the motive behind appointing a particular representative for a decedent was to "manufacture" diversity jurisdiction. *See* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3640 (1985 & Supp. 1993); *Aanestad v. Air Canada*, 382 F.Supp. 550 (C.D.Cal.1974).

*See* Fed.R.Civ.P. 38(a). Since ARCO had neither a constitutional nor a statutory right to demand a jury trial, its jury demand could not have been made "as provided in Rule 38" for purposes of Rule 39. Plaintiff was therefore not entitled to rely on ARCO's jury demand.

### C. The District Court's Discretion under Rule 39(b)

■ Plaintiff contends that the district court abused its discretion under Rule 39(b) by not granting her untimely demand for a jury trial. Rule 39(b) provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." Fed.R.Civ.P. 39(b).

We have held that a district court's discretion under Rule 39(b) "is narrow ... and does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence." *Lewis v. Time, Inc.*, 710 F.2d 549, 556 (9th Cir. 1983). The district court found that plaintiff's failure to timely demand a jury trial "was clearly based on oversight, inadvertence, and inexcusable neglect, and these are not valid grounds for granting a motion under Rule 39(b)." We find no error.

### D. Jury Demands by Plaintiffs in Related Cases

■ Plaintiff also asserts that she had the right to rely on the jury demands of plaintiffs in related cases stemming from the same plane crash. Plaintiff has cited no authority for this proposition. The district court correctly concluded that the argument does not make logical sense and fails of its own weight.

### E. Estoppel

■ Finally, plaintiff contends that defendants' silence while the case was treated as a jury case for over eight years should estop

them from opposing plaintiff's motion to have the case returned to the jury docket.

Our holding in *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 259 (1983) provides some support for the general proposition that a party's course of conduct may prevent it from relying on procedural protections in Rules 38 and 39. In *Reid*, the court did not allow a defendant to object to the withdrawal of plaintiff's jury demand, holding that where the defendant "unambiguously and determinedly acted to defeat [plaintiff's initial] jury request, the only reasonable conclusion is that [the defendant] was not relying on the request and thus was not entitled to invoke the protection of Rule 38(d)." [5] *Id.* at 1305.

Unlike the defendant in *Reid*, there is no indication that defendants Brinkerhoff or Crowley took a position one way or the other with respect to a jury trial; they did not "unambiguously and determinedly" consent to ARCO's jury request. *See id.* at 1305. They were not estopped from opposing plaintiff's motion.

Furthermore, under Rule 39(a)(2), the court may, on its own initiative, remove a case from the jury docket if it finds that the right to a jury trial did not exist under a statute or the Constitution. *See* Fed. R.Civ.P. 39(a)(2). That is what the district court did.

### III. The *Hopson/Sinkler* Doctrine

■ Plaintiff contends that the negligence of Airfast should be imputed to Brinkerhoff and Crowley under the *"Hopson/Sinkler"* doctrine. In *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 86 S.Ct. 765, 766, 15 L.Ed.2d 740 (1966), the Supreme Court held that the Jones Act incorporates the standards of the Federal Employers' Liability Act, which "renders an employer liable for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'" Quoting an earlier ruling in a FELA case, *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), the Court held

---

**5.** Rule 38(d) provides, in pertinent part, that "[a] demand for trial by jury made as herein provided may not be withdrawn without consent of the parties." Fed.R.Civ.P. 38(d).

that "when [an] ... employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of ... FELA." *Hopson*, 383 U.S. at 264, 86 S.Ct. at 766.

The district court ruled that since there was no contractual relationship between Brinkerhoff or Crowley and Airfast, plaintiff could only establish that Airfast was Brinkerhoff or Crowley's "agent" by presenting evidence that either Brinkerhoff or Crowley exercised a sufficient amount of control over Airfast. The court found that while Brinkerhoff and Crowley could "request" changes in Airfast's flight plans, "the ability to 'request' a change without any authority to enforce that request does not constitute control."

In *Tim v. American President Lines, Ltd.*, 409 F.2d 385 (9th Cir.1969) we applied the *Sinkler/Hopson* doctrine. The plaintiff in *Tim* was injured while acting in the course of his employment as an electrician aboard the S.S. President Tyler. The injury occurred as a result of the negligence of a crane operating company, Matson Terminals, that was in the process of unloading cargo from the vessel. The facts of the case (which were not contested) established that the defendant employer had not selected Matson to unload the terminals, it had no oral or written contract with Matson, and it had no ownership or other financial interest in Matson. *Tim*, 409 F.2d at 388. On these facts, we held that Matson could not be considered the "agent" of the employer. *Id.*

Neither Brinkerhoff nor Crowley had a contractual relationship with Airfast, they did not select Airfast to transport their employees, and they had no ownership or other financial interest in Airfast. The district court considered one additional factor—whether Brinkerhoff or Crowley had "actual control" over Airfast. It properly concluded that neither Brinkerhoff nor Crowley had actual control over Airfast's flight plans.[6] Airfast was not the "agent" of Brinkerhoff or Crowley.

6. The district court also held that the transportation of the crew to the Brinkerhoff-I was not an

## IV. Direct Negligence

Plaintiff argues that the district court erred in concluding that Brinkerhoff and Crowley were not directly negligent for William Craig's death. The district court's findings with respect to negligence are reviewed for clear error. *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir.1991).

Plaintiff argues Brinkerhoff and Crowley were negligent in failing to delay the departure of the fifth and fateful flight, and, if unable to delay the flight, in failing to remove their employees from the flight. Plaintiff also contends that defendants failed to provide plaintiff a safe place in which to work. The district court found that Brinkerhoff and Crowley were not negligent in allowing their employees to fly on Airfast's 6:00 AM flight. This finding was based on trial testimony establishing that the first flight that left at 6:00 AM proceeded without mishap, and that a second flight that left at the same time returned to Singapore after it encountered fog. The court concluded that Brinkerhoff and Crowley had no "reason to anticipate that the pilot would proceed to attempt an unsafe landing." This finding was not clearly erroneous.

Plaintiff also argues that defendants did not have prudent policies in effect with respect to transportation of their employees. The district court relied on testimony establishing "that Airfast was an established carrier used by major oil companies in South East Asia.... Moreover, Airfast was qualified, certified, and regulated by Indonesian and Singaporean aviation officials." The court concluded that Brinkerhoff and Crowley "had no duty to investigate a third party's choice of a reputable and well-established carrier." The record supports this conclusion.

Finally, plaintiff contends that Airfast was acting as a common law "agent" of Brinkerhoff and Crowley, and that its negligence should be imputed to them. The definition of "agent" is broader under the *Hopson/Sinkler* doctrine than under the common law. *See Hopson*, 383 U.S. at 264, 86 S.Ct. at

"operational activity" of the vessel. We do not reach this issue.

766. Airfast is neither an agent under the *Hopson/Sinkler* doctrine nor under common law principles. Lack of control is pivotal.

## V. Appurtenances

 Finally, plaintiff contends that the district court erred in granting summary judgment in favor of the defendants on plaintiff's claims of unseaworthiness. We review a grant of summary judgment de novo. *Jones v. Union Pac. R. Co.,* 968 F.2d 937, 940 (9th Cir.1992).

 Plaintiff maintains that the plane transporting William Craig should be considered an "appurtenance" of the Brinkerhoff–I, and that the doctrine of unseaworthiness (or "unairworthiness") is therefore applicable. We reject the argument. The DC–3 aircraft transporting Mr. Craig to Pekanbaru did not, and could not, land on the Brinkerhoff–I. It had no direct relation to nor was it an appurtenance to the vessel.

## VI. CONCLUSION

The district court properly held that plaintiff was not entitled to a jury trial. The record supports the district court's findings that Airfast was not the "agent" of Brinkerhoff or Crowley under the *Hopson/Sinkler* doctrine, and that Brinkerhoff and Crowley were not directly negligent. Finally, the district court properly granted summary judgment in favor of the defendants on plaintiff's claims of unseaworthiness.

**AFFIRMED.**