[No. 82635-8. En Banc.]
Argued September 24, 2009.     Decided January 7, 2010.

JUSTIN ENDICOTT, *Respondent*, v. ICICLE SEAFOODS, INC., *Appellant*.

874

*Michael A. Barcott* and *Thaddeus O'Sullivan* (of *Holmes Weddle & Barcott*) and *Kara Heikkila* (of *Hall Farley Overrecht & Blanton, PA*), for appellant.

*Anthony L. Rafel* (of *Rafel Law Group, PLLC*) and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*) (*Cory D. Itkin*, of counsel), for respondent.

*Robert M. Kraft* and *Richard J. Davies* on behalf of Inlandboatmen's Union of the Pacific, amicus curiae.

¶1 STEPHENS, J. — This case requires us to decide whether the defendant in a Jones Act (46 U.S.C. § 30104) and general maritime suit filed in state court has a right to a jury trial and whether prejudgment interest is available in such a case. A fish cart crushed Justin Endicott's arm while he was working in the freezer on one of Icicle Seafoods' ships. Endicott sued in King County Superior Court, seeking compensation under the Jones Act and under the general maritime doctrine of unseaworthiness. Endicott successfully struck Icicle's jury trial demand. After a bench trial, the judge ruled for Endicott on both the negligence and unseaworthiness claims and awarded Endicott damages and prejudgment interest. Icicle appealed the verdict and the interest award. The Court of Appeals certified the case to this court for direct review. We hold that Icicle had a right to a trial by jury and, therefore, vacate the judgment below and remand for new trial. We

also hold that prejudgment interest is available in mixed maritime cases.

## FACTS AND PROCEDURAL HISTORY

¶2 Endicott worked aboard Icicle's ship the *Bering Star*. On May 1, 2003, Endicott and a co-worker, Jason Jenkins, were pushing a 1,500 pound fish cart through the ship's freezer along an overhead guide rail. The cart slipped off the rail, causing Endicott to trip and catch his arm on a pole. Jenkins did not hear Endicott's cries to stop and kept pushing the cart, which crushed Endicott's arm against the pole. The injury required two surgeries and a lengthy recuperation.

¶3 Icicle's safety manager completed an accident report on May 3, 2003. Attached to the report was a May 9, 2003, statement by Jenkins describing the accident in terms very similar to the report. The statement was addressed "To Whom It May Concern" and bore a formal printed name, signature, and date. Pl.'s Ex. 48, at ICI 0014.

¶4 Endicott sued Icicle in King County Superior Court, seeking compensation under the Jones Act for Icicle's negligence and under the general maritime doctrine of unseaworthiness. Icicle demanded a jury trial, but Endicott successfully moved to strike the demand. At the bench trial, the court admitted Jenkins' statement as an admission by a party opponent under Evidence Rule 801(d)(2)(iv). Icicle sought to introduce evidence of Endicott's drug use and mental health problems, arguing that they established an alternative cause for some of Endicott's lost wages. The court allowed most of this evidence but refused a portion of it, including one social worker's deposition and some proposed exhibits. Finding for Endicott on the negligence and unseaworthiness claims, the court awarded Endicott damages for medical costs and lost wages, general damages, and prejudgment interest. Icicle timely appealed.

¶5 Icicle seeks to vacate the judgment and remand for a new trial by jury. The Court of Appeals certified the case to

this court for direct review, which we accepted. Ruling Accepting Certification, *Endicott v. Icicle Seafoods, Inc.*, No. 82635-8 (Wash. Jan. 28, 2009).

## ANALYSIS

¶6 Icicle challenges the judgment below on four grounds. First, Icicle contends that it had a right to a jury trial of Endicott's claim. Second, it claims that, as a matter of federal law, the trial court did not have the discretion to award Endicott prejudgment interest. Third, Icicle maintains that the trial judge abused his discretion when he admitted Jenkins' statement as an admission by a party opponent. Finally, Icicle argues that the trial judge abused his discretion when he excluded some of the evidence of Endicott's drug use and mental health history. We address the first two contentions but do not reach the third and fourth.

### 1. Jury Trial

¶7 Icicle maintains that it had a right to demand a jury trial of Endicott's claims. Endicott counters that the Jones Act provides him a substantive right to determine whether the case is heard by a judge or a jury. We agree with Icicle. Endicott has no substantive right to a nonjury trial because, for Jones Act cases tried in state court, state law grants both parties a right to demand a jury.

### A. Background

¶8 The United States Constitution extends the judicial power of the federal courts "to all cases of admiralty and maritime jurisdiction," preserving the general maritime law as a species of federal common law. U.S. CONST. art. III, § 2. Congress has given federal courts exclusive jurisdiction over all cases of "admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. § 1333(1) (emphasis added). The "saving to suitors" clause gives plaintiffs the right to sue on maritime actions in state court

provided that the state court proceeds *in personam* (here, "at law") and not *in rem* (here, "in admiralty"). *Madruga v. Superior Court*, 346 U.S. 556, 560-61, 74 S. Ct. 298, 98 L. Ed. 290 (1954). Such suits are governed by substantive federal maritime law. *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409-10, 74 S. Ct. 202, 98 L. Ed. 143 (1953). Maritime plaintiffs may also sue at law in federal court if they meet the diversity of citizenship and amount in controversy requirements. *E.g.*, *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1117 (5th Cir. 1995) (predicating jurisdiction both in admiralty and on diversity). However, general maritime law does not confer federal question jurisdiction. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 378, 79 S. Ct. 468, 3 L. Ed. 2d 368 (1959).

■ ■ ¶9 In 1903, the United States Supreme Court interpreted the general maritime law to preclude seamen's suits against their employers for negligence. *The Osceola*, 189 U.S. 158, 175, 23 S. Ct. 483, 47 L. Ed. 760 (1903). Congress overturned the result in *The Osceola* by passing the Jones Act, which now provides in relevant part:

> A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to . . . a railway employee apply to an action under this section.

46 U.S.C. § 30104(a) . The railway-employee law referred to is the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, which allows recovery for negligence. FELA cases are persuasive authority when interpreting the meaning of the Jones Act unless some aspect of the Jones Act or maritime law makes FELA's application unreasonable in a particular context. *See, e.g.*, *The Arizona v. Anelich*, 298 U.S. 110, 119-23, 56 S. Ct. 707, 80 L. Ed. 1075 (1936) (declining to apply FELA's assumption of the risk rules to Jones Act claims).

¶10 By its terms, the Jones Act allows seamen to sue at law, but not in admiralty, to recover for their employers'

negligence. In an early case, the United States Supreme Court adopted a fictitious reading of the act in order to save it from constitutional challenge. *See Pan. R.R. v. Johnson*, 264 U.S. 375, 44 S. Ct. 391, 68 L. Ed. 748 (1924). The litigant argued that the Jones Act was unconstitutional for two reasons. First, it impermissibly carved out a personal-injury piece of admiralty jurisdiction and transferred it to the courts' common law jurisdiction. *Id.* at 385-87. Second, the Jones Act violated due process by allowing the plaintiff-seaman to "elect between varying measures of redress and between different forms of action" without according equal rights to the defendant-employer. *Id.* at 392. The Court avoided the first issue by interpreting the act to allow negligence suits *both* in admiralty and at law. An admiralty suit would yield a bench trial, while a suit at common law would yield a jury trial. *Id.* at 390-91. The Court dispatched the second contention by concluding that "[t]here are many instances in the law where a person entitled to sue may choose between alternative measures of redress and modes of enforcement." *Id.* at 392.

¶11 *Johnson* left ambiguous whether the plaintiff's power to "elect between . . . different forms of action" is a statutory right to elect the mode of trial (jury vs. nonjury) or whether it is the right to select the jurisdictional basis of trial (at law vs. in admiralty). *Id.* If the latter, the jury trial right flows procedurally from the choice of jurisdiction. This question is what the parties here contest. We review this issue of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007).

### B. Extent of the Jones Act Election

¶12 There is a split among federal and state courts as to which interpretation of *Johnson* is correct, with the Ninth Circuit and California on one side and the Fifth Circuit, Seventh Circuit, Louisiana, and Illinois on the other.

¶13 Endicott argues for the Ninth Circuit's "statutory" interpretation, claiming that he has a substantive federal

right to elect the mode of trial (jury vs. nonjury) under the Jones Act. Br. of Resp't at 6-8. For support he cites *Craig v. Atlantic Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994) ("The plain language of the Jones Act gives a *plaintiff* the option of maintaining an action at law with the accompanying right to a jury trial. The Act makes no mention of a defendant."). The *Craig* opinion uses exclusio alterius reasoning to conclude that the defendant in a nondiversity Jones Act suit filed in federal court has no right to demand a jury trial. *Id.* at 475-76. Endicott also relies on *Peters v. City & County of San Francisco*, No. A061042, 1994 WL 782237, 1995 A.M.C. 788 (Cal. App. Mar. 14, 1994) (unpublished). *Peters* adopts reasoning like *Craig*'s in the state-court context, denying the defendant a jury trial right in a Jones Act and general maritime suit filed in state court under the saving to suitors clause. *Id.* at *3-4. Finally, Endicott argues based on FELA decisions that this jury-election right is substantive. *See Dice v. Akron, C.&Y. R.R.*, 342 U.S. 359, 363, 72 S. Ct. 312, 96 L. Ed. 398 (1952) ("[T]he right to trial by jury is to[o] substantial a part of the rights accorded by [FELA] to permit it to be classified as a mere 'local rule of procedure'. . . ."). If the plaintiff's right to elect the mode of trial is substantive, it binds state courts when they adjudicate Jones Act claims.

¶14 Icicle argues for the Fifth and Seventh Circuits' "jurisdictional" position that Endicott's Jones Act election is limited to choosing the jurisdictional basis of trial (in admiralty vs. at law) and that jury trial rights flow from this election as procedural incidents. *See, e.g., Johnson*, 264 U.S. at 391 ("[T]he injured seaman is permitted, but not required, to proceed on the common law side of the court *with a trial by jury as an incident.*" (emphasis added).). This means that state procedural law, not substantive federal law, governs the defendant's right to a jury trial in state court. To the extent that *Craig* suggests that Endicott has a substantive right to determine the mode of trial, Icicle argues, it is wrong.

¶15 Federal case law interpreting the Jones Act convinces us that the jurisdictional interpretation is correct,

i.e., the plaintiff's election exists solely as to the jurisdiction on which trial is predicated. In contrast, the Ninth Circuit's statutory interpretation arises from a misreading of two Fifth Circuit cases.[1]

¶16 Only two years after *Johnson*, the United States Supreme Court decided *Panama Railroad v. Vasquez*, 271 U.S. 557, 46 S. Ct. 596, 70 L. Ed. 1085 (1926). The issue was whether a Jones Act plaintiff is required to sue in federal court. The Court concluded that *Johnson* interpreted the Jones Act to allow plaintiffs to sue "either in actions *in personam* against the employers in courts administering common-law remedies, with a right of trial by jury, or in suits in admiralty in courts administering remedies in admiralty, without trial by jury." *Id.* at 560. The in personam (at law) suits for negligence could be brought in either federal or state courts under the saving to suitors clause. *Id.* at 560-61. *Vasquez* is consistent with the jurisdictional interpretation of the Jones Act: the Court treats the statute as referring to suits at law versus suits in admiralty and discusses the jury trial right as an incident following from this distinction.

¶17 The progression of federal cases reinforces this interpretation. *See McCarthy v. Am. E. Corp.*, 175 F.2d 724, 726 (3d Cir. 1949) ("[T]he election to which the Jones Act refers is an election of remedies as between a suit in admiralty and a civil action."); *Williams v. Tide Water*

---

[1] The first case held that the plaintiff in a nondiversity Jones Act suit at law may redesignate his suit as one in admiralty (eliminating jury trial) without the defendant's consent. *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1215-17 (5th Cir. 1986). The other held that state procedure governs jury trial rights when a plaintiff brings maritime claims in a suit at law in state court. *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1487-88 (5th Cir. 1992). These holdings are in fact consistent with the jurisdictional interpretation of the Jones Act, as confirmed recently. *See Becker v. Tidewater, Inc.*, 405 F.3d 257, 259 (5th Cir. 2005) (basing jury trial rights on jurisdiction, not on the Jones Act). It is true that *Rachal* and *Linton* contain broad language suggesting that the Jones Act confers a statutory right to a jury trial. The Ninth Circuit uncritically adopted this language without acknowledging that this reading erroneously divorced the jury trial right from its historical ties to jurisdiction. *See Craig*, 19 F.3d at 475-76; *see also* David W. Robertson & Michael F. Sturley, *The Right to a Jury Trial in Jones Act Cases: Choosing the Forum Versus Choosing the Procedure*, 30 J. Mar. L. & Com. 649 (1999) (tracing the mistake).

*Associated Oil Co.*, 227 F.2d 791, 793-94 (9th Cir. 1955) (holding that the jury could hear both the maritime and Jones Act claims because they were brought at law under the saving to suitors clause, not in admiralty); *McAfoos v. Can. Pac. S.S., Ltd.*, 243 F.2d 270, 272, 274 (2d Cir. 1957) (requiring the trial court to treat the plaintiff's suits as an election to bring her in personam claims on the law side in front of a jury); *Tex. Menhaden Co. v. Palermo*, 329 F.2d 579, 580 (5th Cir. 1964) (per curiam) ("The Jones Act merely affords the *injured seaman* the choice between a suit in admiralty without a jury and a suit on the civil side of the docket with a jury."); *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 665-68 & n.5 (7th Cir. 1998) (treating the Jones Act election as pertaining to jurisdiction, with procedural consequences as incidents).

¶18 Louisiana was one of the first states to recognize the federal trend and employ a jurisdictional analysis when determining jury trial rights in state-court Jones Act suits. *See Lavergne v. W. Co. of N. Am., Inc.*, 371 So. 2d 807 (La. 1979); *Hahn v. Nabors Offshore Corp.*, 2002-0084 (La. App. 3 Cir. 6/26/02), 820 So. 2d 1283, 1284. The *Lavergne* plaintiff sued in state court under the Jones Act and general maritime law. His demand for a jury trial was rebuffed. *Lavergne*, 371 So. 2d at 808. On appeal, the Louisiana Supreme Court concluded that, in maritime suits brought at law in state court, state procedural law governs the availability of a jury trial. *Id.* at 809-10. The case was remanded because Louisiana procedural law afforded the plaintiff the right to a jury trial. *Id.*

¶19 Illinois recently resolved a split among its own intermediate appellate courts to side with Louisiana. *See Bowman v. Am. River Transp. Co.*, 217 Ill. 2d 75, 838 N.E.2d 949, 298 Ill. Dec. 56 (2005). One appellate decision had followed *Craig's* statutory interpretation. *Allen v. Norman Bros.*, 286 Ill. App. 3d 1091, 678 N.E.2d 317, 319-20, 222 Ill. Dec. 705 (1997). Another explored the historical meaning of the Jones Act and adopted a jurisdictional interpretation. *Hutton v. Consol. Grain & Barge Co.*,

341 Ill. App. 3d 401, 795 N.E.2d 303, 306-09, 276 Ill. Dec. 950 (2003). In a thorough opinion, the Illinois Supreme Court disapproved of *Allen* and adopted *Hutton* as the proper statement of the law. *Bowman,* 838 N.E.2d at 957-59. It then interpreted state procedural law to grant the defendant a right to trial by jury in the case. *Id.* at 959-61.

¶20 We find the analysis in *Bowman* persuasive. The Jones Act affords the plaintiff the right to elect only the jurisdictional basis for his suit. Once the plaintiff makes his choice of jurisdiction, procedural rights flow as normal incidents of the suit. This means that there is no substantive federal right to elect the mode of trial directly. Rather, state procedural law determines whether the parties have a right to a jury trial. The question then becomes whether Washington law, namely the Washington Constitution, gives the defendant in a Jones Act suit a right to trial by jury.

C. Jury Trial Right in Jones Act Cases under the Washington Constitution

¶21 To determine whether the Washington Constitution confers a right to a jury trial in a particular cause of action, this court follows a two-step approach. WASH. CONST. art. I, § 21; *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645, 771 P.2d 711, 780 P.2d 260 (1989). The first step is to determine the scope of the jury trial right as it existed at the State constitution's adoption in 1889. The second step is to determine the causes of action to which the right attaches. *Id.* As to the former, *Sofie* held that the determination of damages in an action at law was within the jury's province in 1889. *Id.* at 645-48. As to the latter, the inquiry is not whether the specific cause of action existed in 1889, but rather whether the type of action is analogous to one available at that time. *Id.* at 648-49 (applying modern "tort theories by analogy to the 1889 common law tort actions"). An action "centered on negligence" is analogous to the "basic tort theories" that existed when the constitution was

adopted, and the constitutional jury trial right applies. *Id.* at 649-50.

¶22 *Sofie* supports finding a jury trial right in a Jones Act suit. First, the fact-finding function of the jury in a Jones Act case is to determine damages for negligence. This is exactly what *Sofie* held to be within the scope of the 1889 jury trial right. Second, although admiralty did not permit seamen to sue their employers for negligence in 1889, *see The Osceola*, 189 U.S. at 175, the negligence remedy conferred by the Jones Act is the same "basic cause of action" available at common law against nonmaritime employers. *See Sofie*, 112 Wn.2d at 650 (citing employer negligence cases from 1888). Indeed, reported Washington case law reveals in personam negligence claims by seamen against shipmasters in 1899, and there is no indication that similar claims would not have been tried to a jury 10 years earlier.[2] *See Keating v. Pac. Steam Whaling Co.*, 21 Wash. 415, 419, 58 P. 224 (1899) (noting the effect of evidence on the jury in a seaman's personal injury case). We therefore conclude that the Washington constitutional right to a jury trial attaches in a Jones Act claim, with the result that either a plaintiff or a defendant may demand a jury trial on such a claim.

¶23 In sum, the Jones Act does not provide the plaintiff a substantive federal right to determine the mode (jury/nonjury) of trial. The act entitles the plaintiff to elect only the jurisdictional basis for the suit. Once the plaintiff has chosen a suit at law in state court, state procedural law determines whether the parties may demand a jury trial. The Washington Constitution affords Jones Act litigants a jury trial right because the Jones Act is rooted in negligence and so fits within the jury trial right's 1889 purview.

---

[2] "The Supreme Court's decision in *The Osceola*, which temporarily halted suits by seamen based on negligence, does not alter the fact that such suits were indeed tried to juries" before that time. *Bowman*, 838 N.E.2d at 961.

Therefore, we vacate the judgment below and remand for a jury trial.[3]

## 2. Prejudgment Interest

¶24 Icicle argues that, as a matter of federal law, the trial court could not award prejudgment interest on Endicott's claims.[4] We review a prejudgment interest award for abuse of discretion. *Scoccolo Constr., Inc. v. City of Renton*, 158 Wn.2d 506, 519, 145 P.3d 371 (2006). However, a ruling based on an erroneous legal interpretation is necessarily an abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

¶25 Prejudgment interest in maritime cases is substantive and so is controlled by federal law. *See, e.g., Militello v. Ann & Grace, Inc.*, 411 Mass. 22, 576 N.E.2d 675, 678 (1991) (collecting cases). The parties agree that prejudgment interest may be awarded in general maritime claims. *Magee v. U.S. Lines, Inc.*, 976 F.2d 821, 822-23 (2d Cir. 1992).

¶26 Icicle argues that prejudgment interest is unavailable under FELA and so is unavailable under the Jones Act. *See* Jones Act, 46 U.S.C. § 30104(a) (incorporating FELA by reference); *Monessen Sw. Ry. v. Morgan*, 486 U.S. 330, 336-39, 108 S. Ct. 1837, 100 L. Ed. 2d 349 (1988) (holding that FELA does not allow for recovery of prejudg-

---

[3] Both parties assume that, if Icicle has a jury trial right on Endicott's Jones Act claim, the right necessarily extends to Endicott's unseaworthiness claim. *Cf. Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 21, 83 S. Ct. 1646, 10 L. Ed. 2d 720 (1963) (adopting this approach in federal court). This point is not self-evident under our law. Jury trial rights for the Jones Act and general maritime claims do not necessarily arise together. Nevertheless, the parties' briefs do not address the jury trial right in general maritime cases or what effect it may have on this case, a "mixed" action in which general maritime and Jones Act claims are joined in one suit. Because the issue is not disputed, we simply assume without deciding that the jury will resolve both claims on remand.

[4] Icicle also states that prejudgment interest may not be awarded on future damages. This is a nonissue because the trial judge awarded interest only on past damages. Clerk's Papers at 117-18.

ment interest). This deduction is far from obvious.[5] As a compromise, many federal courts have held prejudgment interest to be unavailable in Jones Act suits brought at law but available in suits in admiralty. *See, e.g., Doucet v. Wheless Drilling Co.*, 467 F.2d 336, 340 (5th Cir. 1972); *Williamson v. W. Pac. Dredging Corp.*, 441 F.2d 65, 67 (9th Cir. 1971). *But see Martin v. Harris*, 560 F.3d 210, 219-21 (4th Cir. 2009) (never allowing prejudgment interest awards under the Jones Act); *Cleveland Tankers, Inc. v. Tierney*, 169 F.2d 622, 626 (6th Cir. 1948) (same). State courts, which hear such suits only at law, have interpreted this dichotomy to mean the following: if the trial is to the jury, the case is analogous to a federal suit at law and prejudgment interest is unavailable. If tried to the bench, the case is analogous to a federal suit in admiralty and prejudgment interest may be awarded. *See, e.g., Marine Solution Servs., Inc. v. Horton*, 70 P.3d 393, 412 & n.88 (Alaska 2003); *Milstead v. Diamond M Offshore, Inc.*, 95--2446 (La. 7/2/96), 676 So. 2d 89, 96-97.

¶27 By this logic, the trial court did not abuse its discretion in awarding prejudgment interest to Endicott. Prejudgment interest was available on Endicott's unseaworthiness claim, and it was available on Endicott's Jones Act claim because he tried it to the bench. Thus, the trial judge had discretion to award prejudgment interest as a matter of law.

¶28 On remand, however, the defendant will demand a jury trial and prejudgment interest will not be available under the Jones Act. *See Marine Solution Servs.*, 70 P.3d at 412 & n.88. Thus, the question is whether prejudgment interest is available in a mixed jury trial that includes general maritime claims (allowing prejudgment interest) and Jones Act claims (disallowing it).

---

[5] *Monessen* based its decision on the fact that prejudgment interest was unavailable in common law negligence suits when FELA was passed. 486 U.S. at 337-38. This reasoning does not readily apply to the Jones Act because of the long tradition of awarding prejudgment interest in admiralty cases. *See, e.g., Great Lakes S.S. Co. v. Geiger*, 261 F. 275, 279 (6th Cir. 1919) (awarding prejudgment interest on a maritime claim for personal injury).

¶29 The federal circuit courts are split on the issue. Because a judge has no authority to award prejudgment interest under the Jones Act in jury trial cases, the majority rule disallows an award unless the verdict specifies the damages are apportioned solely to general maritime claims. *See, e.g., Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 956 (5th Cir. 1984). The Second Circuit disagrees. By analogy to other situations in which only one of the plaintiff's claims allows recovery of prejudgment interest, the Second Circuit holds that the unavailability of prejudgment interest under the Jones Act should not limit the plaintiff's recovery on his maritime claim. *Magee*, 976 F.2d at 822-23.

¶30 The two relevant Washington cases do not resolve the question. One case adopted the majority rule in dicta but explicitly rested its holding on unrelated grounds. *Foster v. Dep't of Transp.*, 128 Wn. App. 275, 277, 279-80, 115 P.3d 1029 (2005) (basing its holding on sovereign immunity). The other case held that federal maritime law allowing recovery of prejudgment interest preempts Washington law not allowing for the same recovery. *Paul v. All Alaskan Seafoods, Inc.*, 106 Wn. App. 406, 427, 24 P.3d 447 (2001). *Paul* is inapposite because, in that case, preemption analysis provided a rule of decision for choosing between federal and state legal rules. Here there is no such rule of decision.

¶31 We conclude that the minority rule of *Magee* employs the better reasoning. Because seamen are deemed wards of the court, maritime law is generally construed in seamen's favor. Moreover, *Magee* makes common sense. When a seaman prevails on his maritime claim of unseaworthiness, he is entitled to recover his damages plus prejudgment interest. It would be unjust if the employer's violation of *another* of the seaman's rights—protection from negligence under the Jones Act—deprived the seaman of part of the recovery due on his first claim.

¶32 We therefore hold that, in a mixed Jones Act and general maritime suit, prejudgment interest is available on any damages awarded under the general maritime claim,

even if unapportioned between the Jones Act claims and the maritime claims. If Icicle is concerned that it may pay interest on damages arising solely out of the Jones Act claim, it can ask for a special verdict form apportioning damages.

### 3. Evidentiary Issues

¶33 As noted, Icicle raises additional evidentiary issues as a basis to reverse the verdict in Endicott's favor. Because of our disposition of this case, it is not necessary to address these contentions.

## CONCLUSION

¶34 Icicle is entitled to demand a jury trial of Endicott's claims. We therefore vacate the judgment below and remand for a new trial. We also hold that an award of prejudgment interest is appropriate in a mixed Jones Act and general maritime suit.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.