In re **AIR CRASH DISASTER OF AVIATECA FLIGHT 901 NEAR SAN SALVADOR, EL SALVADOR ON AUGUST 9, 1995.**

No. 96–2094–CIV.

United States District Court,
S.D. Florida.

Aug. 29, 1997.

Aaron J. Podhurst, Barry Meadow, Joel S. Perwin, Podhurst Orseck Josefsberg Eaton Meadow Olin & Perwin, P.C., Miami, FL, for Plaintiffs.

Michael J. Holland, Steven C. Rickman, Judith R. Nemsick, Condon & Forsyth, New York City, John Murray, Kathleen O'Connor, Thornton Davis & Murray, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER OR TREATY JURISDICTION, DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS ON THE GROUNDS OF FORUM NON VENIENS, AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS ON THE GROUNDS OF RES JUDICATA

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion To Dismiss On The Grounds of Lack of Subject Matter Jurisdiction or Treaty Jurisdiction (D.E.59); Defendants' Motions to Dismiss On the Grounds of *Forum Non Conveniens* (D.E.56, 57, 58, 89); and Defendant's Motion to Dismiss on the Grounds of Res Judicata and Collateral Estoppel (D.E.59). The parties have submitted memoranda and supporting documentation for the Court's consideration, and the parties appeared before the undersigned on August 8, 1997 for oral argument, at which counsel for the Plaintiffs and counsel for the Defendants were present.

### BACKGROUND

This case arises out of the August 9, 1995 crash of a Boeing 737–200 Series aircraft, United States Registration Number N125GU, that was operated by Defendant Aviateca, S.A. ("AVIATECA") as flight 901, during a regularly scheduled flight from Guatemala City, Guatemala, to San Salvador, El Salvador. Beginning in September of 1995, surviving relatives and representatives of the estates of nineteen of the decedents filed wrongful death actions against Aviateca and the other Defendants in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. The Defendants removed the actions to this Court on the grounds that Plaintiffs' claims arose under a treaty of the

United States, the Warsaw Convention. Plaintiffs then moved to remand the actions, and the Court granted Plaintiffs' Motions.

After the remands, Defendant Aviateca tions on the grounds that the state court lacked subject matter or "treaty" jurisdiction under the Warsaw Convention. The state trial court denied Defendant's motions in nine of the actions, and, before the motions were heard in the remaining actions, Plaintiffs voluntarily dismissed the other nine cases. Defendant Aviateca then petitioned the Third District Court of Appeal for a Writ of Prohibition precluding the trial court from exercising subject matter jurisdiction over the nine cases in which its motions to dismiss had been denied. The Third District granted the writ and held:

> In applying Article 28(1), it is clear that the trial court does not have subject matter jurisdiction over these nine wrongful death cases. First, Aviateca's domicile is not in the United States. Second, Aviateca's principal place of business is not in the United States. Third, the place of business through which each contract was made was not in the United States. Finally, the place of destination was not in the United States. Therefore, since the United States is not one of the four mandatory for a set forth in Article 28 of the Warsaw Convention, we grant the petition for writ of prohibition.

*Aviateca, S.A. v. Friedman* 678 So.2d 387 (Fla. 3d DCA 1996) ("the *Friedman* decision"). Plaintiffs next filed a motion for rehearing in the Third District which was denied in September of 1996. Plaintiffs also petitioned the Florida Supreme Court for issuance of a Writ of Mandamus, which was denied on December 3, 1996. The trial court then dismissed the nine actions governed by the *Friedman* decision.

In September, 1996, prior to the state court's final dismissal of the nine actions pursuant to the *Friedman* decision, Plaintiffs began filing actions arising from the crash against the Defendants in this Court. In all, surviving relatives and representatives of the estates of sixty-one decedents filed actions in this Court seeking relief for the alleged wrongful death of crew members and passengers.[1] It should be noted, however, that although claims arising out of the deaths of sixty-one individuals are now pending in this Court, many of the Plaintiffs consolidated their actions with those of others, and, therefore, only ten separate case files were opened.[2] Moreover, those ten case files were further consolidated by the Court by Order dated November 22, 1996 such that all discovery and motion practice have proceeded in one case file having the style and caption set forth above.

The Defendants initially sought to stay the proceedings in this Court pending the final dismissal of the actions by the state court. In the alternative, Defendants requested that this Court order Plaintiffs to respond to their *forum non conveniens* motions which they had filed in state court. In addition, Defendants filed a Motion to Dismiss one of the actions, *Blazquez v. Aviateca. et al.*, Case No. 96–2166, on the grounds of lack of treaty jurisdiction and urged the Court to adopt the findings of the state court that Aviateca's "principal place of business" is not in the United States. The undersigned held a con-

---

1. The Court is aware of one action filed by the surviving relative and representative of the estate of a decedent, Donald Davis, in the Southern District of Texas. The Davis plaintiff is not a party to this litigation and has settled its claims against the Defendants in the Texas court. In addition, another plaintiff filed an action in the Southern District of Texas as surviving relative and representative of the estate of another decedent, *Palacios Otero v. Aviateca, et al.*, Case No. H–96–0142. The *Otero* case was dismissed on the grounds of lack of standing.

2. After the consolidation of these actions and since the filing of the motions now before the Court, the representative of the estate of Ricardo R. Blazquez, Plaintiff Debby Blazquez, settled her claims against the Defendants. Case Nos. 96–2166 and 97–2540 (filed separately by the same Plaintiff against Defendant TACA). Therefore, the actions of the representatives of only sixty decedents are now pending before this Court, and only eight case files remain pending before this Court.

ference with the parties at which all parties were represented by counsel. There, the Court ordered the parties to proceed with discovery directed to the issues of *forum non conveniens* and the "principal place of business" of the carrier under the Warsaw Convention.

The parties have now completed discovery as to the issues of *forum non conveniens* and principal place of business. The three motions now pending before the Court are: (1) Defendant Aviateca's Motion to Dismiss on the Ground of Lack of Subject Matter or Treaty Jurisdiction; (2) all Defendants' Motion to Dismiss on the Grounds of *Forum Non Conveniens;* and (3) Defendant Aviateca's Motion to Dismiss on the Grounds of *Res Judicata.*

## LEGAL ANALYSIS

### I. Consolidation of Actions

At the outset, the Court points out that although the claims arising out of the deaths of sixty passengers and crew members that are pending in this Court after the settlement of the *Blazquez* cases are asserted in only eight case files bearing eight case numbers,[3] it is the Court's position, and the parties agree, that sixty separate but consolidated cases are pending before the Court. The significance of this is that these cases can remain in this Court only if there is an independent basis for the exercise of federal subject matter jurisdiction in each of the sixty cases, or if there is federal question jurisdiction in at least some of the cases and, therefore, the ability to exercise supplemen-

tal jurisdiction over all or some of the remaining cases. *See United States v. Tippett,* 975 F.2d 713, 716 (10th Cir.1992) (court must have independent basis for federal jurisdiction over case, even where consolidated with other cases); *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 287 (5th Cir.1989); *McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982).

### II. Federal Jurisdiction

The Plaintiffs argue that there is original federal question jurisdiction in twenty-nine of the cases because they arise under and are governed by the Warsaw Convention ("the Warsaw cases"). Thus, Plaintiffs argue that the Court could exercise supplemental jurisdiction over the remaining "non-Warsaw" cases pursuant to 28 U.S.C. § 1367(a) if there is no other independent basis for federal jurisdiction over those cases.[4] Plaintiffs concede that if the Court determines that there is no treaty jurisdiction over any of the cases and, therefore, the Court dismisses Aviateca from those cases governed by the Warsaw Convention, the Court may not exercise supplemental jurisdiction over the "non-Warsaw" cases, despite the fact that there would be complete diversity in many of the remaining "Warsaw claims" as a result of Aviateca's dismissal.[5] *See* 28 U.S.C. § 1367(b); *Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559 (11th Cir. 1994) (court does not have authority to exercise supplemental jurisdiction over claims that would destroy the Court's original diversity jurisdiction).

 The Court agrees that if jurisdiction is proper in the United States pursuant

---

**3.** The Case numbers of the consolidated cases are as follows: 96–2094, 96–2133, 96–2166 (settled), 96–2183, 96–2190, 96–2197, 96–2227, 97–1792, and 97–1794.

**4.** The Court and the parties refer to these cases as "non-Warsaw" cases because they are not brought on behalf of decedents who were engaged in "international travel" as defined in the Warsaw Convention. In addition, the parties agree that this Court's ability to exercise its diversity jurisdiction in these cases depends upon whether Aviateca's principal place of business is in the United States. If it is not, there is not complete diversity in these cases because, in

each case, an alien is asserting claims against Aviateca, an alien corporation, and one or more domestic corporations. As explained below, Aviateca's principal place of business is not in the United States. Therefore, there is a lack of complete diversity under 28 U.S.C. § 1332. *See* Section II, B, *infra.*

**5.** There would not be complete diversity in the two pending cases in which the Plaintiffs sued Defendant Taca, an alien corporation. Those cases are Case Nos. 96–2094 and 96–2133.

to the Warsaw Convention over any of the claims presented herein, then the Court may, in its discretion, exercise supplemental jurisdiction over any other claims arising out of the same air crash that may be brought in the United States pursuant to 28 U.S.C. § 1367(a). *See United Mine Workers v. Gibbs,* 383 U.S. 715, 724–25, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Alvarez v. Servicios Aereos de Honduras, S.A.,* Case No. H–93–3060–CIV, Memorandum and Order (S.D.Tex. January 11, 1994, Lee H. Rosenthal, United States District Judge). Therefore, as an initial matter, the Court must determine whether there is jurisdiction in the United States over the 29 "Warsaw cases" pursuant to the Warsaw Convention. The Court points out that Plaintiffs are the parties seeking to invoke the Court's jurisdiction, and, therefore, Plaintiffs bear the burden of establishing that jurisdiction lies in this Court. *Cedars–Sinai Medical Center v. Watkins,* 11 F.3d 1573 (Fed.Cir.1993); *Wenz v. Memery Crystal,* 55 F.3d 1503 (10th Cir. 1995).

### A. *Warsaw Jurisdiction*

■ As noted above, twenty-nine [6] of the cases before the Court rely upon Article 28 of the Warsaw Convention [7] for federal subject matter jurisdiction (hereinafter referred to as "the Warsaw Plaintiffs"). It is undisputed that because the flights of the twenty-nine "Warsaw Plaintiffs" were to begin and end in signatory nations or were to begin in signatory nations with stopping places in other territories, the passengers in these cases were injured in "international travel" as defined by Article 1(2) of the Warsaw Convention. Therefore, the twenty-nine "Warsaw actions" "can only be brought subject to the conditions and limits set out in [the] convention." Warsaw Convention Art. 24(1).

■ Among the conditions set out in the Convention is the mandatory requirement of Article 28(1), which provides:

> An action for damages must be brought at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

Warsaw Convention, Art. 28(1). Thus, Article 28 requires that an action for damages must be brought in the territory of a High Contracting Party and at only one of four places: (1) the domicile of the carrier; (2) the principal place of business of the carrier; (3) the place where the contract of transportation was made, *i.e.,* where the passenger ticket was issued; and (4) the place of destination. Where none of the places specified in Article 28(1) are in the United States, no court in the United States has jurisdiction to hear the case, and the case must be dismissed. *See Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983); *In Re Air Disaster Near Cove Neck, New York, on January 25, 1990,* 774 F.Supp. 725, 726 (E.D.N.Y.1991).

In the present case, Defendants argue that this Court, or, for that matter, any court in the United States, lacks subject matter or "treaty" jurisdiction over Plaintiffs' claims because the United States does not fall within any of the designated places set forth in Article 28(1). The parties agree that Aviateca's domicile is in Guatemala. They further agree that no decedent among the twenty-nine "Warsaw Plaintiffs" purchased his ticket in the United States. However, Plaintiffs

6. At the time the present motions were filed, there were twenty-eight cases in which federal jurisdiction was based upon the Warsaw Convention. After the motions had been filed, two additional plaintiffs filed their complaints in this consolidated action. Subsequently, however, as noted above, one of the Warsaw Plaintiffs, Case No. 96–2166, *Blasquez v. Aviateca, et al.,* settled after the filing of these motions. Therefore, there are now twenty-nine such cases pending

before this Court. The cases governed by the Warsaw Convention are set forth in Appendix A, attached hereto.

7. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No, 876, *reprinted at* 49 U.S.C.App. § 1502 note ("Warsaw Convention").

contend that, with respect to five decedents from Norway, the "place of destination" was Miami, Florida, and that, therefore, these cases can be maintained in the United States. Plaintiffs further contend that the carrier, Aviateca's, "principal place of business" is in the United States.

### 1. *Place of Destination*

Plaintiffs contend that the "place of destination" under the Warsaw Convention of the five Norwegian passengers on board Flight 901 was Miami, Florida, and that, therefore, their cases can be maintained in the United States. Each of the Norwegian decedents, Aadland, Eika, Fadum, Finstad and Nybraaten, had been issued two tickets for travel on August 9, 1995, from Oslo, Norway to Managua, Nicaragua, via London and Miami, and back on August 23, 1995, by the same route. The tickets, as written, provided for round trip transportation on British Airways for the Oslo/London/Miami portions of their itinerary and on Aviateca for the Miami/Managua portion. According to Plaintiffs, the parties to these transactions regarded the two legs of the Norwegians' trips as separate, divided transportation, and, therefore, the place of destination of the Miami/Managua/Miami leg was Miami.

In support of their position, Plaintiffs argue that the Court should find that the Norwegians' contracts of carriage, which in these cases are their airline tickets, are unambiguous and, therefore, that the Court can look only at the face of the tickets to determine the intent of the parties. Plaintiffs further argue that the tickets demonstrate that the parties intended that the trips were separate transportation and that the destination of the Miami/Managua/Miami trip was Miami. Apart from the fact that each passenger was issued a separate round trip ticket for the Miami/Managua segment, this argument is based entirely on the use of the notations "SITI" and "SOTO" on the face of the tickets. "SITI" and "SOTO" are acronyms

which, pursuant to standards adopted by the International Air Transportation Association ("IATA"), are used by travel agents to assist in identifying the basis upon which the ticket was sold. *See* Ex. C to Aff. of Oivind Olsen, Ex. 13 to Holland Aff.[8] "SITI" indicates that the sale and issuance of the ticket occurred inside the country of commencement of transportation, and "SOTO" indicates that the sale and issuance of the ticket occurred outside the country of commencement of transportation. Id. According to Plaintiffs, the use of these notations on the faces of the two sets of tickets is conclusive that the parties intended that the Miami/Managua/Miami leg of their itinerary was separate from the Oslo/Miami/Oslo leg and that, therefore, Miami was the place of destination for these passengers with respect to the Miami/Managua/Miami leg.

Plaintiffs also argue that even if this Court should find that the tickets are ambiguous, parol evidence demonstrates that the parties regarded the trips as separate. Finally, Plaintiffs assert that Defendant Aviateca is estopped from denying that the Miami/Managua/Miami flight was separate transportation under the Warsaw Convention because, having processed the tickets as written and accepted their benefits, Aviateca cannot now deny their unambiguous terms, and also because, by denying that the trips are separate, the agent who issued the tickets would be admitting to falsely using improper fare codes in order to attain lower fares for these customers.

Defendants argue that the trip should be construed as "one undivided transportation" consisting of several parts with the ultimate destination in Norway. According to the Defendants, the tickets and the circumstances under which they were purchased demonstrate that the parties regarded the trip as one undivided transportation. Defendants contend that Plaintiffs' reliance on the "SITI" and "SOTO" designations on the faces of the tickets is misplaced and that,

---

8. Of course, the undersigned would not know the meaning of "SITT" and "SOTO" without the benefit of extrinsic evidence supplied by both sides. But, both sides would have to agree that the meaning of the acronyms is essential to the resolution of these motions.

even if the Court were to consider the designations, the "SOTO" designations on the face of the Miami/Managua/Miami tickets only reference the place of commencement of one part of an undivided operation consisting of both the Norway/Miami/Norway trip and the Miami/Managua/Miami trip. Under the Defendants' construction, the place of destination for these decedents, and the place where the actions can be maintained on this theory, is the same as the place of origin, Norway.

■ It is well settled that for purposes of determining the "place of destination" under Article 28(1) of the Warsaw Convention, undivided international transportation can have only one destination. *See In re Alleged Food Poisoning Incident, March 1984,* 770 F.2d 3, 6 (2d Cir.1985); *Swaminathan v. Swiss Air Transport Co.,* 962 F.2d 387, 389 (5th Cir.1992). In undivided round trip transportation, the destination is the same as the place of origin. *Petrire v. Spantax, S.A.,* 756 F.2d 263, 265 (2d Cir.1985); *Swaminathan,* 962 F.2d at 389; *Lee v. China Airlines, Ltd.,* 669 F.Supp. 979, 981 (C.D.Cal.1987); *Butz v. British Airways,* 421 F.Supp. 127, 130 (E.D.Pa.1976). When determining the place of destination, the question of whether the international travel is one "undivided transportation" often arises where the passenger's travel plans include transportation on more than one carrier and pursuant to more than one ticket. The Warsaw Convention specifically provides that transportation conducted on more than one carrier and pursuant to more than one ticket "shall be deemed... to be one undivided transportation, if it has been regarded by the parties as a single operation." Article 1(3). The question now before the Court is whether the Norwegian passengers' transportation between Norway and Managua and back was "regarded by the parties as a single operation" at the time the tickets were purchased.

■ In the present motion, both parties acknowledge that the determination of whether the parties regarded the transportation as a single operation requires an inquiry into the parties' intentions when entering into the contract of carriage. *E.g., In re Alleged Food Poisoning Incident,* 770 F.2d at 6; *Swaminathan* 962 F.2d at 389; *Sopcak v. Northern Mountain Helicopter Service,* 52 F.3d 817, 819 (9th Cir.1995). In determining the parties' intentions, the Court must look to the terms of the contract for transportation, in this case, the airline tickets. *Petrire,* 756 F.2d at 265 ("There is no doubt that a destination is to be determined from the contract for transportation ..."); *Swaminathan,* 962 F.2d at 389; *Sopcak,* 52 F.3d at 819. Where the terms of the contract are unambiguous, the court need not and should not look beyond the terms of the contract in determining the parties' objective intentions. *Swaminathan,* 962 F.2d at 389; *Sopcak,* 52 F.3d at 819. However, where there is an ambiguity as to the intentions of the parties as expressed in the contracts for carriage, the court will look beyond the face of the ticket and consider the circumstances surrounding the purchase of the tickets. *Petrire,* 756 F.2d at 265 ("What should matter when determining whether two or more ticket booklets constitute a single contract for purposes of the Treaty are the time and place of issuance of the booklets and the contemplated degree of continuity of the journey being ticketed."); *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980,* 748 F.2d 94, 96–97 (2d Cir.1984) (in determining whether the parties regarded separate trips as a single operation, court considered handling of ticket reservations and issuance and payment for tickets).

### a. *Intentions of the Parties*

■ As explained above, Plaintiffs argue that the tickets issued to the Norwegian passengers are unambiguous. Therefore, Plaintiffs contend that the Court need look no further than the face of the tickets to determine the parties' objective intentions when entering into the contracts.

The following facts can be ascertained from the face of the tickets:

Both sets of tickets were issued by the same carrier, British Airways, through the

same agent, Oivend Olsen from the NSB Travel Agency in Oslo, and on the same day, August 7, 1995. The tickets were issued by NSB on British Airways ticket stock, which is consistent with NSB having been British Airways' agent and British Airways having been Aviateca's agent in connection with the issuance of the Miami/Managua/Miami ticket. *Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100 (D.C.Cir.1988). The Court notes that, as Aviateca's sub-agent, NSB's knowledge that the Norwegians would be leaving from Oslo, traveling on to Managua and then returning to Oslo is imputed to Aviateca, and, therefore, Aviateca was aware of the Norwegian passengers' intention to travel through to Managua and back to Norway as part of the same operation. *See Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d 722 (7th Cir.1986) (travel agent acts as airline's agent); *Computel, Inc. v. Emery Air Freight Corp.*, 919 F.2d 678 (11th Cir.1990) (under Florida law, agent's knowledge imputed to the principal).

The tickets further reflect that the trip from Norway to Miami, through London, was scheduled for the same day as the trip from Miami to Managua and that the return trip from Managua to Miami was scheduled the same day as the return trip from Miami to Norway. The layover would have been less than sixteen hours both ways.[9] Common sense dictates that when a traveler plans such a short layover between the parts of a journey, the traveler regards the layover as merely an intermediate stopping place and not his or her destination. *See In re Air Crash Disaster at Warsaw Poland*, 748 F.2d 94, 96 (2d Cir.1984) (length of layover, in excess of twenty-four hours, one of the considerations used by the court in determining that transportation was separate); *In re Alleged Food Poisoning Incident*, 770 F.2d 3, 6 (2d Cir.1985) (on round trip journey to and from Riyadh, Saudi Arabia, stops in United States were no more than "agreed stopping places"). Likewise, the short layover in the present case is consistent with the Norwegian passengers having regarded Miami as an intermediate stopping place rather than their destination.

Also on the face of the tickets are the "SITT" and "SOTO" designations upon which Plaintiffs rely in support of their contention that the parties regarded the two legs of the Norwegians' trip as separate transportation. As noted above, the tickets for the flights from Norway to Miami and back to Norway contain on their face the designation "SITT", which signifies "sale inside and ticket issued inside the country of commencement of international transportation." *See* Ex. C to Aff. of Oivind Olsen, Ex. 13 to Holland Aff. The tickets for the flights from Miami to Managua and-back to Miami contain the designation "SOTO", which signifies "sale outside and ticket issued outside the country of commencement of international transportation." *Id.* However, as explained below, the Court finds that Plaintiffs' reliance on these notations as evidence of the parties' intentions with respect to the place of destination is misplaced.

First, the Court agrees with Defendants that these designations merely indicate the place of issuance of the tickets and the fare structures that were used by the agent in issuing the tickets. *See* Ex. C to Aff. of Oivend Olsen, Ex. 13 to Holland Aff. ("This indicator will help identify which transaction was used as the basis to determine the fare construction method."). The "SOTO" designation on the Miami/Managua/Miami ticket indicates only that the Miami/Managua/Miami leg of the trip commenced, *for purposes of determining the applicable fare rate*, in Miami and does not affect the fact that the overall transportation originated in and was intended to end in Norway.

 Second, and perhaps more important, there is no reason to believe that the passengers had any idea what the signifi-

---

9. The parties represented in Court that the layover in Miami was actually only several hours on both trips. However, there is no evidence in the record as to how long the layover was because the copies of the coupons for the Norway—Miami leg of the trip do not contain the exact time of departure, only the date.

cance of the "SITI" and "SOTO" designations was or whether those designations conflicted with or were representative of their intentions when their tickets were issued. As Plaintiffs have acknowledged, it is the intent of all parties to the contract, including the passengers, that the Court must consider when determining whether the transportation "has been regarded by the parties as a single operation." *See Swaminathan,* 962 F.2d at 389; *Karfunkel,* 427 F.Supp. at 974.

Thus, regardless of the fact that the ticketing agent utilized the "SOTO" designation to indicate the fare structure, the parties' mutual intentions that the Norwegian passengers would be traveling from Norway to Managua and back to Norway with intermediate stopping places in London and Miami are clear, and the use of different fare structures on the faces of the tickets in order to take advantage of reduced fare rates does not detract from the unitary nature of the resulting contract or the transportation that was ticketed. *See Petrire,* 756 F.2d at 265 (the use of two separate ticket booklets for a round trip journey cannot change unitary nature of the resulting contract or the transportation being ticketed). Therefore, although the Norwegian decedents' transportation was performed by two different carriers pursuant to two different contracts for carriage and two different fare structures, the unambiguous terms of the contracts reflect that the parties to the ticketing transaction regarded the transportation between Norway and Managua and back to Norway as a single operation.

The Court points out that while it is satisfied that the terms of the Norwegian passengers' tickets are unambiguous and clearly reflect the parties' intentions that the Norwegian passengers' trip from Norway to Managua and back was a single undivided operation, even if the terms of the contracts were considered ambiguous as to the parties' intentions, the evidence of the circumstances surrounding the issuance of the tickets also demonstrates that the parties regarded the

trips as a single operation. For example, the travel agent who issued the tickets, Olsen, states that he regarded the two sets of tickets issued to each as part of one contract of transportation when he issued them. Olsen Aff., Ex. 13 to Holland Aff. Olsen also states that at the time the tickets were issued, the passengers requested the full routing of Oslo/London/Miami/Managua and back to Oslo, again through Miami and London. *Id.* Finally, Olsen explains that the only reason two tickets were issued per passenger was so that the Norwegian Youth Council, which sponsored the trips, could take advantage of the reduced fare structures.[10]

While Plaintiffs do not dispute these facts, they argue that the Court should view the fact that the passengers would not have been able to obtain the discount fares if both segments of the trip had been included on a single ticket as indicative of the fact that the agent deliberately created divided transportation in order to get those fares. The Court disagrees. Travel agents routinely arrange for transportation through separate tickets for any number of reasons, including efforts to qualify for lower fares for their customers and necessity when, for example, there is no single carrier that can accommodate a traveler's plans such that the agent must book the two carriers separately. *See Sopcak,* 52 F.3d 817. However, whatever the reason for the use of separate contracts, their use does not affect the conclusion that the transportation governed by the contracts is undivided where, as here, the parties regarded such transportation as a single operation.

Moreover, the Court's conclusion that the Norwegians and NSB regarded their itinerary as a single operation is consistent with the overwhelming majority of cases in which the courts have determined that parties regarded travel as a single operation where tickets were issued at the same time by the same agent for multiple legs of journeys. *See Swaminathan,* 962 F.2d 387 (unambiguous terms of tickets demonstrate that undivided transportation with destination at place

10. Payment for all of the Norwegians' tickets was made by the Norwegian Youth Council (LNU) to

NSB's bank account at Sparebanken Nor in Oslo, Norway. *See* Olsen Affidavit at ¶ 2.

of origin intended where passenger purchased open-ended round-trip ticket all together at same time from one agent); *In re Alleged Food Poisoning,* 770 F.2d 3 (passenger was traveling from Riyadh, Saudi Arabia to New York City and back with three stops on the way each way pursuant to tickets contained in two separate booklets and via several different air carriers; court held that where passenger purchased tickets at same time, and the booklets clearly listed Riyadh as the origin and destination, parties regarded the journey as undivided transportation); *Petrire,* 756 F.2d 263 (carrier issued two separate ticket booklets for passenger's journey from Spain to New York and back to Spain; court held that the relevant considerations are the time and place of issuance of the tickets and the contemplated degree of continuity of the journey being ticketed and that there was only one contract and one transportation where tickets were issued at the same time by the same agent for round-trip travel to be interrupted by no more than a five-day stopover.); *Sopcak,* 52 F.3d 817 (court found that parties intended continuous undivided transportation where employer arranged for and paid for two legs of trip with two different carriers); *Vergara v. Aeroflot 'Soviet Airlines',* 390 F.Supp. 1266 (D.Neb. 1975) (parties intended undivided transportation on trip around the world pursuant to six ticket booklets each with place of destination being place of origin despite change in plans due to unavailable flight during the trip where carrier was aware of the destination as well as intermediate stops); *In re Korean Air Lines Disaster of Sept. 1, 1983,* 664 F.Supp. 1478, 1479–80 (D.D.C.1986), *aff'd sub nom Chan v. Korean Air Lines,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) (court found destination was place of origin based on terms of ticket though passenger

claimed he had no intention of returning to place of origin and only purchased ticket with destination as stated to save money where no indication that carrier intended that destination on ticket was not place of destination).

In fact, there are only two [11] reported decisions cited by Plaintiffs in which courts have held that separate tickets represented separate transportation for purposes of determining the place of destination under Article 28: *Karfunkel v. Compagnie Nationale Air France,* 427 F.Supp. 971 (S.D.N.Y.1977), *quashed on other grounds,* and *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 and *Aanestad v. Air Canada, Inc.,* 382 F.Supp. 550, 551 (C.D.Cal. 1974). The *Aanestad* decision is simply out of step with virtually all other courts addressing the "destination" issue under the convention. In *Aanestad,* the court held that if the return leg of a round trip ticket is left open, then the airline and a passenger have not made a completed contract for the return leg. Therefore, the court found that the first leg of a passenger's round-trip journey was separate from the return leg. The court's holding was specifically rejected by another court in the same district, *Lee v. China Airlines, Ltd.,* 669 F.Supp. 979, 981(C.D.Cal.1987) ("Court declines to follow *Aanestad* because it finds its characterization of the nature of airline tickets to be inaccurate"), and specifically criticized by several other district and circuit courts. *See Swaminathan,* 962 F.2d at 389 (recognizing rejection of Aanestad by the same District Court and holding that there can only be one destination for round trip transportation); *Butz v. British Airways,* 421 F.Supp. 127(E.D.Pa.1976), *aff'd,* 566 F.2d 1168 (3d Cir.1977) (rejecting reasoning in *Aanestad* ). This Court agrees with the reasoning in the

---

**11.** The Court is cognizant of the decision in *In Air Crash Disaster at Warsaw, Poland,* 748 F.2d 94 (2d Cir.1984). There, the Court found that the parties did not regard transportation as a single operation for purposes of determining whether the Warsaw Convention applied to a domestic flight. However, the court did not determine the "place of destination" for purposes of Article 28 in that case. Moreover, the facts of that case, in which the tickets were issued at separate times by separate agents and on separate carriers and in which the carriers had no way of knowing of the passengers' alternate plans, are easily distinguishable from those of the cases herein. The Court also notes that although the Court in *Hurley v. KLM Royal Dutch Airlines,* 562 F.Supp. 260, (C.D.Cal.1983), found that round trip airline tickets provided for separate transportation, that decision was later vacated by the same court. 602 F.Supp. 1249 (1985).

foregoing cases and declines to follow the *Aanestad* analysis. Plaintiffs have not cited and the Court has not found any other reported decision in which passengers purchased tickets for transportation all at the same time and the court found that the travel was divided transportation for Warsaw purposes.

As to *Karfunkel*, although the Court found divided transportation, its facts are easily distinguishable from the facts in these cases. In *Karfunkel*, the passengers purchased tickets at a New York travel agency for flights from New York to Italy, Italy to Israel, and Paris to New York. Twenty days later, while traveling in Israel, the same passengers purchased tickets from a different travel agency for a flight from Israel to Paris. By purchasing this ticket in Israel, the passengers were able to take advantage of a special reduced fare which would not have been available to them in the United States or in connection with travel to the United States. The Jerusalem travel agent who sold the discounted tickets for the Karfunkels' Israel to Paris flight stated that "he was unaware of any intention of plaintiffs to continue on to New York from Paris." In addition, there was no indication that the carrier had any way of knowing the Karfunkels' intention to continue on to New York from Paris. Thus, the court held that there was no indication that the destination of the trip from Israel to Paris was New York but, rather, that the trip was separate from the trip from New York pursuant to the tickets purchased in New York. As discussed above, the Norwegian passengers in the present cases all purchased both sets of their tickets at the same time from the same travel agent, and the travel agent and the passengers all knew at the time the tickets were purchased that the passengers intended to return to Oslo after completing their study in Nicaragua. Thus, the court's conclusion in *Karfunkel* is not persuasive under the circumstances presented in this case.

### b. Estoppel

■ Plaintiffs also argue that Defendant Aviateca is estopped from denying that the trips were separate transportation because Aviateca accepted payment for the tickets which were marked "SOTO", indicating that the Miami/Managua/Miami segment of the Norwegians' travel commenced in Miami, and because, by repudiating the meaning of the "SOTO" designation, the travel agent is acknowledging that he misrepresented the place of commencement of the transportation in order to obtain discount fares.[12] The Court points out that no reported case has applied estoppel principles to defeat the otherwise obvious intentions of the parties that they were engaged in a single transportation. However, assuming that equitable estoppel[13] can be applied in cases such as these, Plaintiffs must show that the Norwegians detrimentally relied upon or were otherwise misled by the "SITI" and "SOTO" designations on their tickets or that the failure to apply estoppel would work an injustice upon the Norwegians. *See Marine Transp. Services Sea–Barge Group, Inc. v. Python High Performance Marine Corp.,* 16 F.3d 1133 (11th Cir.1994) (equitable estoppel designed to aid law in administration of justice where, without its aid, injustice might result); *Najarro v. SASI International, Ltd.,* 904 F.2d 1002 (5th Cir.1990) (estoppel unavailable in the

---

**12.** Plaintiffs suggest that by denying that the trips were separate, the travel agent is admitting to "illegally" writing the tickets to achieve lower fares, and that Aviateca, having accepted payment for the tickets on the terms on which they were written, should be precluded from advocating an interpretation of the tickets that would make them "illegal". However, Plaintiffs have presented no authority that writing the tickets as the travel agent did was "unlawful" or, even if unlawful, that construing the tickets as undivided transportation would be contrary to public policy.

**13.** The Court notes that at the hearing before the undersigned, Plaintiffs confirmed that they are relying on equitable estoppel principles, as opposed to promissory estoppel. *See Pinnacle Port Community Association, Inc. v. Orenstein,* 872 F.2d 1536 (11th Cir.1989) (promissory estoppel requires reliance on a promise, whereas equitable estoppel requires representation of fact).

absence of deceptive conduct). As already noted above, there is no evidence that the Norwegians were even aware of the "SITI" and "SOTO" notations on their tickets, let alone knew of and relied on, their significance. Moreover, in light of the fact that the Court has determined that the "SITT" and "SOTO" designations only serve to indicate the applicable fare structures, the only way the Norwegians could have been detrimentally affected by the notations is if Aviateca or British Airways failed to honor the reduced fare structure that applied based on the designations. There is no allegation of that in this case. Finally, this Court fails to perceive that the application of equitable estoppel is necessary to prevent an injustice in these cases. If this Court agrees with Aviateca that the "SOTO" designation is not controlling and otherwise finds that the Norwegians' place of destination was in Norway, their surviving relatives and representatives will have other fora, including Norway and Guatemala, in which to pursue their claims against Aviateca. Thus, the Court finds that, to the extent that they may apply, Plaintiffs' estoppel arguments must fail based on the facts of this case for purposes of the place of destination inquiry under Article 28 of the Warsaw Convention.

### c. Conclusion as to Place of Destination

In sum, the Court finds that the terms of the contracts of carriage issued for the five Norwegian passengers in this case are unambiguous. Upon careful consideration, said unambiguous terms clearly reflect that the parties regarded the Norwegian passengers' transportation from Norway through London and Miami to Managua and back through Miami and London to Norway as a single operation. As such, the transportation should be deemed, under the Warsaw Convention, as undivided transportation.

The Court further finds that there can be only one destination for such undivided transportation and that the place of destina-

tion for these passengers was Oslo, Norway, the same as the place of origin. Finally, the Court finds that even if the terms of the contracts of carriage were ambiguous, the circumstances surrounding the issuance of the tickets to these passengers further reflect that the parties to the transaction regarded the travel as undivided transportation. Therefore, Miami is not the place of destination for the five Norwegian passengers under the Warsaw Convention, and, absent some other basis for treaty jurisdiction under Article 28(1), this Court and all other courts in the United States lack treaty jurisdiction over these five passengers' Warsaw claims.

### 2. Carrier's Principal Place of Business

Plaintiffs argue that the United States is the "principal place of business" of the carrier as that term is used in Article 28(1). The Court notes that it is somewhat unclear from the Plaintiffs' complaints and from the Plaintiffs' memoranda who the Plaintiffs claim the carrier is in this case for purposes of Warsaw jurisdiction. Plaintiffs appear to plead alternatively that Aviateca is the carrier or that Aviateca and America Central Corporation [14] are engaged in a joint venture which operated as a single "carrier enterprise." *Citing Lear v. New York Helicopter Corp.*, Case No. 20150, Supreme Court of New York, Order dated July 16, 1990, *aff'd* 597 N.Y.S.2d 411 (N.Y.A.D.1993) (the court accepted such a theory when offered by the defendants based on the plaintiffs' failure to rebut the defendants' evidence as to the interrelatedness of the corporations). However, Plaintiffs explained at the hearing that they contend only that Aviateca is the carrier and that any allegations regarding Aviateca's activities in the United States are relative only to the determination of Aviateca's principal place of business. Therefore, the Court will consider only whether Aviateca's principal place of business for purposes of the Warsaw Convention is in the United States.[15]

---

**14.** Plaintiffs in Case No. 96–2094 assert that CIT Leasing Corp. was also part of the joint venture.

**15.** The Court is cognizant of the fact that in its Motion to Dismiss on the Grounds of Res Judica-

■ The law is clear that under the Warsaw Convention, a carrier can have but one principal place of business. *Smith v. Canadian Pacific Airways*, 452 F.2d 798, 800 (2d Cir.1971); *In re Air Disaster Near Cove Neck, New York, on January 25, 1990*, 774 F.Supp. 718, 722 (E.D.N.Y.1991); *Recumar Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 798 (S.D.N.Y.1985). What is not clear under the Warsaw Convention is what analysis should be employed in determining the principal place of business of a carrier. Some cases have noted that the principal place of business is generally the place of incorporation, *e.g., Swaminathan v. Swiss Air Transport Co., Ltd.*, 962 F.2d 387, 390 (5th Cir.1992), and other cases have suggested that a carrier's principal place of business is at its "corporate and operational headquarters." *Recumar, Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 798 (S.D.N.Y.1985); *Stanford v. Kuwait*, 648 F.Supp. 657, 661 (S.D.N.Y.1986). These cases, of course, provide little guidance where, as here, the carrier has its executive offices or "corporate headquarters" at one place and conducts a substantial amount of its business operations out of another place. Plaintiffs suggest in this case that the Court adopt "the total activities" or "nerve center" tests which are employed by the federal courts in order to determine principal place of business under the federal diversity jurisdiction statute. *See, e.g., Katonah v. USAir*, 868 F.Supp. 1031, 1033, n. 2 (N.D.Ill.1994); *In re: Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 734 F.Supp. 1425 (N.D.Ill.1990); *Herschel v. Eastern Airlines, Inc.*, 216 F.Supp. 347 (S.D.N.Y.1963). The undersigned is not persuaded of the correctness of the approach suggested by the Plaintiffs since it appears to be based solely on the coincidence that the Warsaw Convention, as translated from the French, employs the phrase "principal place of business," which is the same terminology employed in 28 U.S.C.

§ 1332(c). However, this Court need not decide which among these tests controls in this case because, under any test, Aviateca's principal place of business is clearly in Guatemala City, Guatemala.

■ In concluding that Aviateca's principal place of business is in Guatemala, the Court has considered the many undisputed facts in the record. The facts establish that although Aviateca has a substantial presence in the United States and derives substantial revenue from its U.S. based activities, the nature, quantity and extent of Aviateca's business activities in Guatemala City clearly demonstrate that Aviateca's principal place of business is in Guatemala. Some of the more important facts that serve to illustrate this conclusion are as follows:

(1) Aviateca has been operating in Guatemala as the flag carrier of Guatemala for nearly seventy years. The company was founded in 1929 in Guatemala, and, although it has been operated by the government, reorganized and subsequently privatized, it has operated continuously as Guatemala's flag carrier since 1929. *See* Aviateca's "Anuario 1995–1996" at p.19, Ex. B to Declaration of Jorge Palacios. Aviateca, as a privately owned airline, was formally registered in the Republic of Guatemala on August 3, 1989. *Id.*

(2) Aviateca has been recognized by the United States government as a *foreign* air carrier since 1954 when Aviateca began operating flights to the United States, as evidenced by Aviateca's Foreign Air Carrier Permit. Defendant's Memorandum in Support of Motion to Dismiss for Lack of Treaty Jurisdiction, Exs. B and C.

(3) Aviateca regards its headquarters as being located in Guatemala City, Guatemala. To that end, Aviateca has approximately 725 employees in Guatemala and none in the

---

ta and Collateral Estoppel, Defendant Aviateca asserts that the Plaintiffs are bound by the state court's ruling in the *Friedman* case that Aviateca's principal place of business is not in the United States. However, due to the significance of the jurisdictional issues presented by these

motions and because the Plaintiffs contend that their rights to take discovery on the issue of "principal place of business" was improperly curtailed, this Court elects to resolve this issue on its merits rather than on the basis of a procedural bar based on the state court rulings.

United States (Aviateca's remaining 38 employees are found in Mexico, Costa Rica, and Panama), and Aviateca leases approximately 11,849 square meters of space in the area of La Aurora International Airport in Guatemala City, as well as another 1,816.80 meters of space in the airport itself for ticket counters, airport services, *etc.* *See* Declaration of Andres Olivero at ¶ 5. In the United States, Aviateca subleases a portion of ACC's cargo space at Miami International Airport. ACC subleases 27,000 feet of space that is divided for use among Aviateca, NICA and TACA airlines. *See* Deposition of Eric Calzado at pp. 41–43; Defendant ACC's Response to Interrogatory # 10 (Plaintiff's Exhibit 12).

(4) Aviateca's corporate departments, such as finance, accounts payable, insurance and claims, payroll budgeting and revenue, sales offices, general manager offices, purchasing and maintenance are all located in Guatemala City. Palacios Declaration at ¶ 5.

(5) Aviateca prepares and maintains all of its company records and financial documents, such as Annual Reports, personnel, financial, maintenance and training records, in Guatemala City. *Id.*

(6) Aviateca's Board of Directors consists of Guatemalan or Salvadoran citizens and residents, and all of the meetings of the Board of Directors have taken place in Guatemala. Olivero Declaration at ¶ 7.

(7) The annual shareholder meetings are held in Guatemala City, and Aviateca's officers maintain offices at Aviateca's corporate headquarters in Guatemala City, where all corporate decisions regarding the operations of the carrier and Aviateca's hiring and other policy making decisions are made. *Id.* at ¶ 8.

(8) The passengers and cargo transported in and out of Guatemala and the revenues generated from that transportation exceed that of any other location where Aviateca conducts business.[16] *See* Palacios Declaration at ¶ 8, and exhibits thereto. While Aviateca's revenues generated in the United States are a significant part of its business, those revenues do not exceed the revenues derived from Guatemala-based business and operations.[17] *Id.* at ¶¶ 14, 18.

(9) Aviateca operates far more passenger flights from and to Guatemala than any other location. *See* Palacios Declaration, Ex.C. In addition, in 1995 Aviateca operated only 820 flights in or out of United States cities, as compared to 9,376 total flights. *Id.* Nearly every flight during that time period either originated, terminated or had a stopover at Guatemala. *See* Holland Reply Declaration at Ex. E.

(10) Although Aviateca's pilots receive simulator training in the United States, Aviateca's pilots receive their ground school training in Guatemala. *See* Holland Declaration at Ex.4. Defendants point out that there are no appropriate simulator training facilities in Central America. Reply Memorandum as to Treaty Jurisdiction at p. 12. Aviateca's cabin crews, mechanics and technical personnel are mainly trained in Guatemala. *Id.* And,

(11) Aviateca's aircraft, whether leased or owned, are based in Guatemala City, where the majority of the maintenance is performed. *See,* Declaration of Rene Debroy at ¶ 15.

---

**16.** The Court notes that these comparisons are based on Aviateca's operations in Guatemala only. However, the figures are even more persuasive when the comparison is made between all operations conducted out of Aviateca's offices in Guatemala, City, from which all of Aviateca's Central American operations are conducted, and operations conducted in the United States through ACC.

**17.** The Court notes that Plaintiffs contend that, according to their methodology, Aviateca's U.S. operations generate more revenue than its Guatemala operations. However, the undersigned does not agree that the evidence supports Plaintiffs' contention that Aviateca's 1994 revenues for passengers traveling by Aviateca "out of the United States" exceeds Aviateca's revenues for passengers traveling "out from Guatemala." Rather, the undersigned accepts Aviateca's contention that, in 1994, 26.4% of its passenger revenue was derived from flights out of the United States whereas 31% of its passenger revenue was derived from flights departing from Guatemala. *See* Palacios Declaration and Exhibits thereto.

The foregoing facts, though not exhaustive of the facts in the record, decidedly demonstrate that Aviateca's operational headquarters and principal place of business, both qualitatively and quantitatively, are located in Guatemala City. Plaintiffs do not dispute any of these, facts. Rather, they contend that the facts are incomplete or distorted and that, when considered in their entirety, the facts should lend themselves to the conclusion that Aviateca's principal place of business is in the United States.

In support of their contention that the principal place of business is in the United States, Plaintiffs argue that:

(1) Aviateca's United States Issued Foreign Air Carrier permit is a valuable economic asset because it manifests Aviateca's authority to fly in and out of several United States cities, including Miami, which is one of its most important routes;

(2) Aviateca has leased almost all of its U.S. registered aircraft from U.S. companies; [18]

(3) Aviateca maintains bank accounts and obtains financing in the United States;

(4) Aviateca has used and continues to use the services of United States attorneys and accountants;

(5) Aviateca has more weekly flights originating in the United States than in Guatemala (though Plaintiffs concede that more flights originate in all of Central America than in the United States);

(6) Aviateca's pilots receive simulator training in the United States; and,

(7) Aviateca's aircraft and avionics have received maintenance or repair service in the United States from numerous companies, including the flight 901 aircraft which had repairs done in the United States prior to the crash.

Accepting the foregoing as true, the Court finds that while these points certainly evidence Aviateca's substantial presence in the United States and the substantial amount of revenue derived from its business activities and flight operations in the United States, the Court remains convinced that the amount of business activities and flight operations conducted in Guatemala and the nature of the operations and activities undertaken in Guatemala unequivocally confirm that Aviateca's principal place of business, for Warsaw purposes, is Guatemala.

Plaintiffs further rely on the fact that Aviateca contracts with American Central Corp., a U.S. corporation ("ACC") to manage much of its U.S. operations. As Plaintiffs point out, ACC and Aviateca share at least one employee, Orlando Hotusing. Also, ACC performs general sales and marketing functions for Aviateca in the United States pursuant to a sales agency agreement between the companies,[19] handles passenger and cargo operations for the carrier in the United States, provides ground handling, personnel and management services in the United States, and contracts with numerous third party vendors on behalf of Aviateca in the United States, some of whom are actually selected by ACC representatives on behalf of Aviateca, to handle Aviateca's U.S. operations (often referred to by Plaintiffs as outsourcing), including such matters as baggage handling, ticket counter and reservation services, catering, and wheel chair and escort service.

Plaintiffs make the novel suggestion that in evaluating Aviateca's principal place of business, the Court should disregard not only the corporate distinctions between ACC and Aviateca, but also the corporate distinctions between Aviateca and its third party vendors, and that the Court should aggregate all of the employees engaged in

---

18. Plaintiffs point out that the lease for the aircraft at issue in this litigation was signed by Orlando Hotusing, an employee of ACC, formerly an employee of Aviateca, on behalf of Aviateca and that the lease was negotiated by Aviateca's U.S. counsel, Ken Hoffman.

19. The Court points out that ACC performs the services for 5 Central American carriers in the United States: Aviateca, LACSA, TACA, COPA and NICA. ACC has a separate sales agency agreement with each carrier. See ACC Response to Interrogatory 1, Plaintiffs' Ex. 12.

business on behalf of Aviateca at all of these companies in order to compare the number of Aviateca's employees in Guatemala with the number of its employees in the United States. Plaintiffs have not furnished the Court with any authority which would support its contention that ACC's activities together with the activities of the third party vendors with whom ACC contracts on behalf of Aviateca accurately reflect Aviateca's presence in the United States. While courts will, under limited circumstances, disregard corporate distinctions and bind corporations or partnerships based upon the acts of other entities where there is a showing, for example, that one entity is, in fact, the alter ego of another or that the entities are joint venturers, Plaintiffs do not rely on such theories in support of their effort to consolidate these other entities' employees under Aviateca's presence. Plaintiffs have not presented, and the Court is unaware of, any other theory which would permit the Court to disregard the corporate distinctions between Aviateca and these other entities, and, in fact, Plaintiffs' theory is contrary to fundamental principals of corporate law. As a basic principal, corporate distinctions will not be disregarded unless there is a showing of fraud, illegality or bad faith perpetuated through observance of the corporate form. *E.g., United States v. Fidelity Capital Corp.,* 920 F.2d 827, 837 (11th Cir.1991); *Maley v. Carroll,* 381 F.2d 147, 153 (5th Cir.1967); 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 41 (rev. perm ed.); N. Lattin, *The Law of Corporations* § 16, at 82 (1971). Plaintiffs have not alleged that Aviateca was or has been engaged in the perpetuation of a fraud or illegality akin to fraud or that it has acted in bad faith through its corporate existence, and, therefore, there is no basis under the facts of this case to disregard the corporate distinctions between Aviateca and ACC and/or its third party vendors.

Putting Aviateca's revenues and its relationship with ACC and third party vendors aside, and accepting the other facts upon which Plaintiffs rely as true, this Court finds that, under any analysis, Aviateca's principal

place of business is in Guatemala City, Guatemala. Aviateca is an international carrier operating in the United States and Central America out of a small Central American country. It is hardly surprising that, under these circumstances, Aviateca has a substantial presence in the U.S. and derives substantial revenue from its U.S. based activities. Nonetheless, under the Warsaw Convention, a carrier can have but one principal place of business. *Smith v. Canadian Pacific Airways,* 452 F.2d 798, 800 (2d Cir.1971); *In re Air Disaster Near Cove Neck, New York, on January 25, 1990,* 774 F.Supp. 718, 722 (E.D.N.Y.1991); *Recumar Inc. v. KLM Royal Dutch Airlines,* 608 F.Supp. 795, 798 (S.D.N.Y.1985). For the reasons discussed above, the nature, quantity and extent of Aviateca's business activities in Guatemala City as compared to the United States establish clearly that Aviateca's principal place of business, under any of the tests advocated by the parties, is in Guatemala City. Therefore, Miami is not Aviateca's principal place of business under the Warsaw Convention, and, absent some other basis for treaty jurisdiction under Article 28(1), this Court and any other court in the United States lacks treaty jurisdiction in the United States over the twenty-nine cases governed by the Warsaw Convention in this case.

### 3. Conclusion As To Claims Governed By Warsaw Convention

For the reasons discussed above, the Court has determined that Aviateca's principal place of business is in Guatemala and that the place of destination for the five Norwegian passengers' transportation was in Norway. Therefore, given that Plaintiffs have conceded that Aviateca's domicile is in Guatemala and that no Plaintiffs decedent purchased his or her ticket in the United States, jurisdiction is not proper in the United States pursuant to the Warsaw Convention over any of the claims for damages against Aviateca that are governed by the Convention. Accordingly, Aviateca must be dismissed as a Defendant from those twenty-nine cases that are governed by the Warsaw

Convention. *See Gayda v. LOT Polish Airlines*, 702 F.2d 424, 426 (2d Cir.1983); *In re Air Disaster Near Cove Neck, New York, on January 25, 1990*, 774 F.Supp. 725, 726 (E.D.N.Y.1991).

## B. *Diversity Jurisdiction*

### 1. *The Warsaw Cases*

As set forth above, the Court has determined that there is no subject matter jurisdiction in the United States over any of the claims asserted against Defendant Aviateca in the twenty-nine cases based on the Warsaw Convention, and, therefore, Aviateca must be dismissed. Thus, the question that next arises is whether this Court has subject matter jurisdiction over the remaining Defendants on any other basis. Plaintiffs assert that, absent Aviateca's presence as a Defendant, this Court would have diversity jurisdiction in the twenty-nine cases pursuant to 28 U.S.C. § 1332(a)(2).[20] As noted above, since Plaintiffs are the parties seeking to invoke the Court's jurisdiction, Plaintiffs bear the burden of establishing that jurisdiction lies in this Court. *Cedars–Sinai Medical Center*, 11 F.3d 1573; *Wenz*, 55 F.3d 1503.

■■■■ 28 U.S.C. § 1332(a)(2) provides that the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value $75,000,[21] and is between citizens of a state and citizens or subjects of a foreign state. For purposes of determining whether diversity exists, courts must consider the citizenship of all parties in a case. The presence of at least one alien on both sides of an action destroys diversity and, therefore, diversity

jurisdiction cannot be invoked if that is the case. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir.1989). In the present case, plaintiffs have asserted causes of action in their individual capacities on behalf of themselves and surviving relatives of the decedents as well as in their capacities as representatives of the decedents' estates. Therefore, the Court must consider the citizenship of the individual plaintiffs as well as that of the decedents because the legal representative of an estate is deemed to be a citizen of the same state as the decedent. § 1332(c)(2). Also, all of the Defendants are corporations. A corporation is deemed to be a citizen where it is incorporated and where it has its principal place of business. § 1332(c)(1).

■■■ A review of the complaints in twenty-seven of the Warsaw cases reflects that *all of the Plaintiffs and decedents are or were aliens with citizenship in a total of seven different foreign countries: Guatemala, Nicaragua, Mexico, Norway, Panama, Equador, and Costa Rica.* These complaints further reflect that, after the dismissal of Aviateca, causes of action will be pending against the following defendants: America Central Corp. ("ACC"), a Florida Corporation with its principal place of business in Miami, Florida, C.I.T. Leasing Corp. ("CIT"), a Delaware Corporation with its principal place of business in New Jersey; and International Lease Finance Corp. ("ILFC"), a California corporation with its principal place of business in California. All of these Defendants are domestic corporations. Thus, there will be complete diversity among the parties in these twenty-seven cases. Moreover, the com-

**20.** The Court notes that although some of the Warsaw Plaintiffs alleged diversity jurisdiction as an alternative basis for federal subject matter jurisdiction in their complaints, not all of the Warsaw Plaintiffs did. However, in light of the complex nature of the issues now before the Court which affect all parties in this consolidated action, the Court will treat all of the Warsaw Plaintiffs' cases as if diversity had been alleged in the alternative for the purposes of resolving the pending motions. Plaintiffs, however, are cautioned that the law requires the pleading to con-

tain a statement of the basis for subject matter jurisdiction and that at least some of the complaints in the "Warsaw cases" will have to be amended to assert jurisdiction under the diversity statute, 28 U.S.C. § 1332.

**21.** The Court is cognizant of the fact that at the time some of these actions were filed, the jurisdictional minimum under 28 U.S.C. § 1332 was $50,000.

plaints reflect that the amount in controversy exceeds the sum of $75,000. Thus, Plaintiffs in twenty-seven of the Warsaw cases have satisfied their burden of demonstrating that this Court will have federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in each of their cases upon entry of this Order.[22]

■■■■ *However, two of the Warsaw Plaintiffs have asserted claims against TACA International Airlines, S.A., ("TACA") a Salvadoran corporation with its principal place of business in El Salvador. TACA is an alien Defendant, and, in light of the fact that there are alien plaintiffs in both cases in which TACA was named as a Defendant, there is a lack of complete diversity in those two Warsaw cases.* The two cases in which TACA was named as a Defendant are Case No. 96–2094, Plaintiff Espejel, and Case No. 96–2133, Plaintiff Grimaldo. Plaintiffs Espejel and Grimaldo have not asserted any other basis for original subject matter jurisdiction, and, as the Court stated in Section II, *supra*, the Court may not exercise supplemental jurisdiction over cases that will destroy diversity when the basis for the Court's original jurisdiction over the subject matter is based on 28 U.S.C. § 1332. *See* 28 U.S.C. § 1367(b) and *Palmer*, 22 F.3d 1559. Therefore, two of the Warsaw cases, Plaintiff Espejel's and Plaintiff Grimaldo's cases, Case nos. 96–2094 and 96–2133, must be dismissed for lack of subject matter jurisdiction.

### 2. *The Non–Warsaw Cases*

■■■■ A review of the complaints in the thirty-one non-Warsaw cases[23] reflects that all except one of the Plaintiffs and decedents in those cases are or were aliens with citizenship in five different countries: Guatemala, Nicaragua, Canada, Denmark and Ecuador.

One Plaintiff, De Lacayo, and the decedent whose estate she represents are or were alleged to be United States citizens. However, Plaintiffs have not alleged DeLacayo's state of citizenship. The Plaintiffs in all thirty-one of the non-Warsaw cases have asserted causes of action against Defendant Aviateca. As discussed in Section I,A,2, *supra*, Aviateca is a Guatemalan corporation with its principal place of business in Guatemala. Therefore, Defendant Aviateca is an alien, and there is no diversity in the thirty non-Warsaw cases in which there are alien Plaintiffs and/or decedents. In addition, Plaintiffs in all thirty-one of the cases have asserted claims against Defendants ACC and CIT. Also noted above, ACC and CIT are United States corporations. Plaintiffs in six of these cases have asserted claims against ILFC, also a United States corporation. In light of the fact that Plaintiffs have failed to allege the state of citizenship of · Plaintiff DeLacayo, Plaintiffs have failed to demonstrate that there is complete diversity in the DeLacayo case. Based on the foregoing, there is a lack of complete diversity in all thirty-one of the non-Warsaw cases.

Plaintiffs in these thirty-one cases have not alleged any other basis for original federal subject matter jurisdiction. As stated in Section II, *supra*, the Court may not exercise supplemental jurisdiction over cases that will destroy diversity when the basis for the Court's original jurisdiction over the subject matter is based on 28 U.S.C. § 1332. *See* 28 U.S.C. § 1367(b) and *Palmer*, 22 F.3d 1559. In light of the fact that the Court has determined that there is no subject matter jurisdiction based on the Warsaw Convention, the only basis upon which the Court maintains jurisdiction over any of the sixty cases in this consolidated action is diversity jurisdiction. Therefore, the Court may not exercise supplemental jurisdiction over the thirty-one

---

**22.** The twenty-seven cases are: (Case No. 96–2183) Eide, Eika, Fadum, Braathen Nybraaten, Bustamante, Vallecillo, Procuna Chamorro (for 2 decedents), Martinez, Fragoso, Rodriguez, De-Mendez, Alarcon Alba; (Case No. 96–2190) De-Michele; (Case No. 96–2197) Bolanos, Chavez, Alvarez, DeRamos (for 2 decedents), Ramos Hernandez, Lopez Alvarez, Amezcua Garcia; (Case

No. 96–2227) Castro, Ocampo, Rojas; (Case No. 97–1792) Barrientos; and (Case No. 97–1794) Garcia de Monzon. These cases are set forth in Appendix C, attached hereto.

**23.** *See* Appendix B, attached hereto, setting forth the thirty-one non-Warsaw cases.

non-Warsaw cases, as the joinder of those cases with the cases now pending before the Court would destroy diversity. Accordingly, the thirty-one non-Warsaw cases must be dismissed on the grounds that the Court lacks subject matter jurisdiction.

### 3. Conclusion As to Diversity Jurisdiction

In sum, the Court finds that there is subject matter jurisdiction in this Court over twenty-seven of the Warsaw cases pursuant to 28 U.S.C. § 1332(a)(2). *See* Footnote 17 for a list of these cases and Appendix C, attached hereto. There is a lack of complete diversity in the two Warsaw cases in which TACA is a Defendant, Espejel (Case No. 96–2094) and Grimaldo (Case No. 96–2133), because there are aliens on both sides. The Court cannot exercise supplemental jurisdiction over Espejel's and Grimaldo's claims because the Court's jurisdiction over the remaining claims is based on diversity, and Espejel and Grimaldo would destroy diversity. Accordingly, the Espejel and Grimaldo cases are dismissed for lack of subject matter jurisdiction.

With respect to the thirty-one non-Warsaw cases, the Court finds that the Plaintiffs have failed to demonstrate that there is subject matter jurisdiction in this Court. There are aliens on both sides of thirty of the cases, and, in the one case in which the Plaintiff is alleged to be a United States citizen, Plaintiffs have failed to allege her state of citizenship, and there are three United States corporations named as Defendants in her case. Therefore, the thirty-one non-Warsaw cases are dismissed for lack of subject matter jurisdiction. *See* Appendix B for a list of these cases.

### III. *Forum Non Conveniens*

After resolution of the issues regarding subject matter jurisdiction in the preceding section, the Court is now left with the twenty-seven cases listed in Appendix C, from which Aviateca will be dismissed pursuant to this Order. Therefore, the only remaining claims are those asserted in the twenty-seven cases against Defendants ACC, CIT and ILFC. The question now before the Court is whether the cases, as they now stand, should be transferred pursuant to the doctrine of *forum non conveniens* to an alternative forum. However, the Court points out that at the time the Motion to Dismiss on the Grounds of *forum non conveniens* was briefed by the parties, Aviateca was still a party to the case, and the parties' analyses of the relevant private and public interest factors heavily relied upon Aviateca being the main defendant in the cases. Now that Aviateca has been dismissed, and the remaining Defendants are domestic corporations, the discussions in the parties' memoranda are no longer apposite. Further, the Court notes that at the hearing before the undersigned on these motions, counsel for the Defendants acknowledged that he might not be inclined to pursue the Motion to Dismiss On the Grounds of *forum non conveniens* if the Motion to Dismiss on the grounds of lack of subject matter jurisdiction were granted. Accordingly, the Court believes that the best course at this juncture is to deny the Defendants' Motion to Dismiss on the Grounds of *forum non conveniens* without prejudice to the Defendants refiling the motion tailored to the cases as they are now constituted.

### IV. *Conclusion*

Based on the foregoing facts and conclusions, the Court finds that sixty separate but consolidated cases are pending before the Court and that twenty-nine of the cases are governed by the Warsaw Convention and thirty-one of the cases are not. The Court further finds that there is no jurisdiction in this Court or any court in the United States over the claims against Aviateca in the Warsaw cases pursuant to Article 28(1) of the Warsaw Convention and, therefore, Aviateca should be dismissed from the cases governed by the Warsaw Convention. The Court further finds that there is diversity jurisdiction in twenty-seven of the cases governed by the Warsaw Convention in light of the dismissal of Aviateca, but that in the two cases in

which TACA has been named as a Defendant, there is a lack of complete diversity and, therefore, that those two cases should be dismissed. Finally, the Court finds that the Plaintiffs have failed to demonstrate that there is subject matter jurisdiction in the remaining thirty-one cases not governed by the Warsaw Convention. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Aviateca's Motion to Dismiss On the Grounds of Lack of Subject Matter Jurisdiction or Treaty Jurisdiction (D.E.59) is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant Aviateca is DISMISSED as a Defendant from the twenty-nine cases governed by the Warsaw Convention listed in Appendix A, as set forth above. It is further

ORDERED AND ADJUDGED that Plaintiff Espejel and Plaintiff Grimaldo's cases, case nos. 96–2094, as to Espejel's claims only, and 96–2133, are DISMISSED, as set forth above. It is further

ORDERED AND ADJUDGED that the thirty-one cases listed in Appendix B are dismissed as set forth above. It is further

ORDERED AND ADJUDGED that discovery shall be completed and trial scheduled for the resolution of the cases listed in Appendix C. It is further

ORDERED AND ADJUDGED that the parties shall submit a joint discovery plan for the completion of discovery in the cases listed in Appendix C within thirty (30) days hereof. It is further

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss On the Grounds of Res Judicata or Collateral Estoppel (D.E.59) is DENIED AS MOOT. It is further

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss On the Grounds of Forum Non Conveniens is DENIED WITHOUT PREJUDICE. It is further

ORDERED AND ADJUDGED that the Appendices attached hereto shall be incorporated herewith as part of the Court's rulings herein.

## APPENDIX "A"
### All Cases Filed That Were/Are Governed By the Warsaw Convention

| Case # | Plaintiffs | Decedents | Defendants | Status |
|---|---|---|---|---|
| 96–2094 | Maria Elsa Miranda Espejel | Jose R. Martinez | Aviateca, ACC, CIT, ILFC, TACA | Dismissed for Lack of Diversity |
| 96–2133 | Carmen Grimaldo | Edward H. Quiros | Aviateca, ACC, CJT, ILFC | Dismissed for Lack of Diversity |
| 96–2166 | Debby Blazquez | Ricardo R. Blazquez | Aviateca, ACC, CIT | Settled–Dismissed |
| 96–2183 | Andrea Fragoso | Maria Ines Banuelos | Aviateca, ACC, CIT | All Cases Pending |
| | Ileana Bustamante De Ozler | R. Alejandro Bustamante | | |
| | Carmen M.P. Chamorro De Fuentes Del Campo | Consuelo C. De Procuna Luis Procuna Montes | | |
| | Omar Dosal Martinez | Otilia Dosal Martinez | | |
| | Maria Murillo M. DeMendez | Jose G. Mendez Luna | | |
| | Nilda G. Zea De Rodriguez | Carlos H. Rodriguez | | |
| | Mayra Alarcon Alba | Fredy Valiente | | |
| | Libia H.S. Vallecillo | Roberto E. Vallecillo | | |
| | "The Norwegians" | "The Norwegians" | | |
| | Asbjorn Eide | Elbjorg Aadland | | |
| | Tor Eika | Dordi Eika | | |
| | Hakon Fadum | Kristin Fadum | | |
| | Anette Braathen | John Finstad | | |
| | Arild Nybraaten | Geir Nybraaten | | |
| 96–2190 | Massimo De Michele | Gloria Maria Serpa De Michele | Aviateca, ACC, CIT | Pending |
| 96–2197 | Roberto/Aida Bolanos | Claudia C. Bolanos | Aviateca, ACC, CIT | Pending |
| | Maria E. Rodriguez Chavez | Ramon Cardenas | | |
| | Josefina Barajas Alvarez | Benito Hernandez | | |
| | Eva L. Cobian De Ramos | Jose A. Ramos Lepe | | |
| | Eva L. Cobian De Ramos | Martin R. Hernandez | | |
| | Deyanira Lopez Alvarez | Paulino R. Hernandez | | |
| | Maria Santos A. Garcia | Domingo V. Gonzalez | | |
| 96–2227 | Mauricio Gabino G. Castro | Walter Gabino Guzman | Aviateca, ACC, CIT, ILFC | Pending |
| | Vera Murillo Ocampo | Jesus Francisco Torres | | |
| | Xenia Rojas | Rolando R. Sanchez | | |
| 97–1792 | Olga E. Barrientos | Carlos Palencia | Aviateca, ACC, CIT | Pending |
| 97–1794 | Lesbia C. Garcia de Monzon | Samuel A. Monzon | Aviateca, ACC, CIT | Pending |

## APPENDIX "B"
### All Cases Filed That Were/Are *Not* Governed By the Warsaw Convention

| Case # | Plaintiffs | Decedents | Defendants | Status |
|---|---|---|---|---|
| 96–2183 | Lucrecia Diaz De Franco | Francisco De Franco | Aviateca, ACC, CIT | Dismissed for Lack of Diversity |
| | Maria E.R. Del Carmen | Jorge Del Carmen | | |
| | Carlos Flores Alonso | Sor Astelia F. Alonso | | |
| | Nicolas A. Cedillo | Maria H.H. De Cedillo | | |
| | Ana K. De Lacayo | Eugenio Lacayo Lacayo | | |
| | Elizabeth Pravia | Miguel Miranda | | |

| | | | |
|---|---|---|---|
| | Pedro/Maria Mucciolo | Magdalena G. Mucciolo | |
| | | Genaro A. Mucciolo | |
| | Kaari Raaska | Andrea Raaska Bran | |
| | | Melanie Raaska Bran | |
| | | Stephanie Raaska Bran | |
| | | Crew Members | |
| | Ervino S. Monzon Ochoa | Samuel A. Monzon | |
| | Hilda S. Furian De Gatica | Jose M. Gatica–Delgado | |
| | Douglas G.M. Marroquin | Silvia R.H. Torres | |
| | Astrid I. Cardona Andrade | Mario R.E. Castellanos | |
| | Hugo Palacios Urizar | Claudia L.E. DePalacios | |

| Case # | Plaintiffs | Decedents | Defendants | Status |
|---|---|---|---|---|
| 96–2190 | Aura M. Olivares Gutierrez | Alvaro D.E. Bermudez | Aviateca, | Dismissed for |
| | Ena Solorzano Peralta | Carmen A. Miranda | ACC, CIT | Lack of Diversity |
| | (for 3 decedents) | Miguel E.M. Solorzano | | |
| | | Carmen S.P. deMiranda | | |
| | *Zeyda Offir Flores Rivers | Evarista D.G. Montano | | |
| | *Marta Lorena Ramirez | Hipolita E.R. Velasquez | | |
| | *Carolina de Talavera | Nelson E. Talavera Mejia | | |
| | *Reynaldo R. Blanco | Damarys S. de Ramirez | | |
| 96–2197 | Demecio R. Hernandez/ | Juan Jose R. Castellanos | Aviateca, | Dismissed for |
| | Maria Del Carmen C.Guillen | | ACC, CIT | Lack of Diversity |
| | Roger Paul Palacios Otero | Raul Palacios Roman | | |
| | *Zeyda Offir Flores Rivers | Evarista D.G. Montano | | |
| | *Marta Lorena Ramirez | Hipolita E.R. Velasquez | | |
| | *Carolina de Talavera | Nelson E. Talavera Mejia | | |
| | *Reynaldo R. Blanco | Damarys S. de Ramirez | | |
| 96–2227 | Maritza M. Solorzano | Alvaro D. E. Bermudez | Aviateca, | Dismissed for |
| | Susana M. de Garcia | Dionisio E. G. Montano | ACC, CIT, | Lack of Diversity |
| | Marlen Kragh | Niels Peter Kragh | ILFC | |
| | Marilyn Marker | Palle Marker | | |
| | Diego Granizo Romero | Magdalena Mucciolo | | |
| | Everitn C. Moreno Noguera | Hipolita R. Velasquez | | |

* These Plaintiffs have asserted claims in two different case numbers

## APPENDIX "C"
### Twenty–Seven Cases Remaining After Court's Rulings